KUTTROFF, PICKHARDT & CO. *v.* UNITED STATES (No. 2494)[1]

SECTION 501, TARIFF ACT OF 1922—WRITTEN FINDINGS OF FACT IN REAPPRAISEMENT—UNITED STATES VALUE UNDER SECTION 402 (d), TARIFF ACT OF 1922.

The Board of United States General Appraisers, in reappraisement appeals under section 501, Tariff Act of 1922, must find the ultimate and essential facts required by the issue; and each must be supported by substantial evidence, although the correctness of the findings will not be inquired into. Having found that the imported dye (dutiable under paragraph 28, Tariff Act of 1922, according to "the American selling price (as defined in subdivision (f) of section 402, Title IV) of any similar competitive article manufactured or produced in the United States,") had domestic competition, it then became the board's duty to find the American selling price of the similar article. In order to do this, it was necessary to find whether or not the American product had been freely offered for sale. The board's failure to find on this question is fatal error; and the cause is reversed and remanded with instructions.

United States Court of Customs Appeals, April 20, 1925

APPEAL from Board of United States General Appraisers (reappraisement No. 13619–A, December 12, 1924)

[Reversed and remanded.]

*Barnes, Wilson & Halstead* (*Frank M. Halstead* of counsel) for appellants.
*William W. Hoppin*, Assistant Attorney General (*J. G. Lerch*, special attorney, of counsel), for the United States.
*Thomas J. Doherty* and *George F. Lamb* (*De Vries, Doherty, Davis & Lamb* of counsel), amici curiæ.

[Oral argument March 25, 1925, by Mr. Halstead, Mr. Lerch, and Mr. De Vries]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The material imported in this case is benzo red 12 B, admittedly properly classifiable as a coal-tar product under paragraph 28, Tariff Act of 1922. It was entered at a value of $0.795 a pound, that being claimed by the importers to be the United States value thereof as defined by section 402 (d) of said tariff act. The local appraiser advanced the value to $2 a pound, which value, on appeal to a single general appraiser, was affirmed. On further appeal to the Board of General Appraisers, that board further advanced the value to $7 a pound, by its written decision of January 10, 1924. On appeal to this court from said decision, the cause was remanded to the Board of General Appraisers for a statement of its findings of fact required by section 501, Tariff Act of 1922.—*Kuttroff, Pickhardt & Co.* v. *United States*, 12 Ct. Cust. Appls. 316, T. D. 40316. Thereafter, at the hearing before said board, the importers offered certain

---

[1] T. D. 40861.

findings of fact and conclusions of law which they asked the court to find and make. The seventh finding of fact and the third conclusion of law, so denominated by importers' counsel, are as follows:

7. No evidence was offered or introduced to show, or tending to show, that Middletown, Connecticut, is the principal market of the United States for dyes, or that pontamine fast pink G had ever been sold or offered for sale to more than one person at or prior to December 8, 1922. No evidence was offered or introduced to show or tending to show that pontamine fast pink G was ever offered for sale in New York or other well-known markets of the United States, or that it was offered to any wholesaler in dyes, or to any consumer or user of dyes in the United States, on or prior to December 8, 1922, other than to I. E. Farmer & Company, whose business is not shown, and that if said pontamine fast pink G was ever offered for sale or sold elsewhere in the United States than to I. E. Farmer & Company, of Middletown, Connecticut, it was so sold or offered for sale in such a manner that importers of and wholesale dealers in dyes were not informed of such fact and could not, with ordinary diligence, have learned thereof.

3. That the Government failed to do so in that it failed to offer any competent evidence to show that benzo red 12 B and pontamine fast pink G were commercially used or suitable for use for the same purposes or in the same manner, and further failed to show that pontamine fast pink G had been freely offered for sale to all purchasers, or that it had been offered for sale in the principal markets of the United States, or had been sold or offered for sale in the ordinary course of trade.

At the same time counsel for the Government offered, among others, the following finding of fact and conclusion of law, which it asked the court to find and make:

6. That prior to the date of exportation pontamine fast pink G was freely offered for sale in the principal market of the United States at $2 per pound.

1. On December 8, 1922, there was freely offered for sale in the principal market of the United States a dyestuff of domestic origin known as pontamine fast pink G at $2 per pound.

The board did not adopt either suggestion made, but thereafter made and returned to this court the following findings of fact and reasons therefor:

As matters of fact the board finds that the importation consists of coal-tar colors, known as benzo red 12 B, entered at a value of $0.795 per pound and advanced by the local appraiser to $2 per pound, the American selling price. The single general appraiser affirmed the appraised value. The basis of comparison used in the appraisal and reappraisal was comparison of the importation with a coal-tar color manufactured and sold in the United States by I. Dupont de Nemours Co., known as pontamine fast pink G sold in the United States at $2 per pound. We find that the two articles compared possess the same quality of shade, fastness to light, washing, bleaching, salt water, perspiration, acid, soda, and chlorine; that the two articles compared accomplish results substantially equal when used in substantially the same manner, but that the imported merchandise possesses $3\frac{1}{2}$ times as much strength for the purposes and uses intended and applied to the two dyes as the domestic product; that the two articles compared are both sold in the trade in the United States and used in practice according to the respective tinctorial powers.

Therefore, we conclude as matter of law that benzo red, the merchandise under consideration, is competitive with pontamine fast pink G sold to the trade and used in the United States, and that, therefore, the appraisal was properly based upon the selling price of the domestic color known as pontamine fast pink G, but that in both sale and use there is and must be a proportionate consideration and differentiation as to the different tinctorial powers, or dyeing strength of the two commodities, and that therefore the single general appraiser should have reappraised the imported merchandise per pound 3½ times the sale price in the United States of pontamine fast pink G, to wit: $7 per pound, and the decision of the single general appraiser is modified accordingly.

Thereupon, the appellants assign error here, and allege, as one of the grounds thereof, the following:

3. In reappraising the imported merchandise at a price based upon sales of pontamine fast pink G, without finding that said pontamine fast pink G was freely offered for sale at such prices in the principal market of the United States in the ordinary course of trade on or about the date of exportation of the imported merchandise.

While many errors are alleged, the one principally urged here is the third assignment of error just quoted.

Findings of fact are required in this case because of section 501, Tariff Act of 1922, which provides that, in reappraisement matters, the Board of General Appraisers, in making its final decision, "shall state its action in a written decision to be forwarded to the collector, setting forth the facts upon which the finding is based and the reasons therefor." This court, in several cases, has called attention to the importance of carefully making such findings of fact.— *Kuttroff, Pickhardt & Co.* v. *United States*, 12 Ct. Cust. Appls. 261, T. D. 40269; *United States* v. *Borgfeldt & Co.*, 12 Ct. Cust. Appls. 324, T. D. 40482. The substance of our holding in these cases is stated by Barber, Judge, in the first case cited:

Facts should be found by the board and its conclusions of law thereon stated before this court should be called upon to determine the issues that may be involved. * * * Of course, they (findings of fact) should be upon the material issues.

The importance of such findings of fact must, on consideration, be apparent. For the first time the Tariff Act of 1922, in section 501, has provided a direct appeal, in reappraisement matters, from the Board of General Appraisers. But this appeal is "upon a question or questions of law only."

Before this statute was enacted this court had held it might properly pass upon questions of law arising upon the action of the board in reappraisement matters, when the cause came to this court on appeal from final classification.— *Wolff* v. *United States*, 1 Ct. Cust. Appls. 181, T. D. 31217; *Briggs, etc.,* v. *United States*, 1 Ct. Cust. Appls. 408, T. D. 31482; *Harris* v. *United States*, 3 Ct. Cust. Appls. 5, T. D. 32286; *Maddaus* v. *United States*, 3 Ct. Cust. Appls. 330,

T. D. 32623; *United States* v. *Johnson Co.*, 9 Ct. Cust. Appls. 258, T. D. 38215; *United States* v. *Passavant*, 169 U. S. 16 (21). Section 501 of the Tariff Act of 1922 provided for a direct appeal on questions of law in reappraisement matters; it did not change the rule heretofore expressed by this court as to what were to be considered such questions of law.

In *United States* v. *Johnson Co.*, *supra*, the court applied the following rule to the decision of the board in reappraisement matters (270):·

Whether or not all the evidence considered by the board is here shown becomes immaterial, it being shown that some substantial evidence supports their decision.

The findings of fact provided for in said section 501 should ʼbe measured by the same rule. If a finding of fact made by the board under this statute has no substantial evidence in the record to support it, the action of the board in making it is then reviewable as a matter of law. In this respect, such findings are analogous to special findings of a court under sections 649 and 700, Revised Statutes. Where such special findings of fact have been made, they have been held to have the force and effect of the verdict of a jury.—*Distilling & Cattle Feeding Co.* v. *Gottschalk Co.*, 66 Fed. 609; *Insurance Co.* v. *International Trust Co.*, 71 Fed. 89; *Wilson* v. *Merchants' Loan & Trust Co.*, 183 U. S. 121 (128); *State National Bank* v. *Smith*, 94 Fed. 605 (609). The rule is well settled, in jury cases in United States courts, that where there is any evidence which, if believed by· the jury, is legally sufficient to support the verdict, it will not be disturbed.—*Napier* v. *Greenzweig*, 256 Fed. 196 (202); *Herencia* v. *Guzman*, 219 U. S. 44; *Nashville Interurban Co.* v. *Barnum*, 212 Fed. 634 (639).

In all cases the facts found must be ultimate facts. 38 Cyc. 1980; *Nashville Interurban Co.* v. *Barnum*, *supra*.

In view of the premises just stated, the importance of findings of fact by the Board of General Appraisers on all ultimate and essential facts is apparent. To ascertain what such ultimate facts are requires reference to the provisions of the statute.

Paragraph 28, Tariff Act of 1922, provides in part that the coal-tar products named therein shall be assessed at:

Forty-five per centum ad valorem based upon the American selling price (as defined in subdivision (f) of Section 402, Title IV) of any similar competitive article manufactured or produced in the United States.

Section 402 (f) is as follows:

The American selling price of any article manufactured or produced in the United States shall be the price, including the cost of all containers and coverings, of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition packed ready for delivery, at which such article is freely offered for sale to all purchasers in the principal market of the United

States, in the ordinary course of trade and in the usual wholesale quantities in such market, or the price that the manufacturer, producer, or owner would have received or was willing to receive for such merchandise when sold in the ordinary course of trade and in the usual wholesale quantities, at the time of exportation of the imported article.

Under these provisions of law, in order to apply the American selling price, the board must first find that there was a similar competitive article to the article of import, manufactured or produced in the United States. The board so found, the said article being denominated as pontamine fast pink G. The board had next to find what the American selling price of the similar competitive article was, as defined by section 402 (f).

An analysis of this subsection demonstrates that to establish this American selling price, certain basic facts must be shown, as follows:

First. The price of goods and containers, and other costs ready for delivery.

Second. The price at which such article is freely offered for sale to all purchasers.

Third. The price in the principal market of the United States.

Fourth. The price in the ordinary course of trade.

Fifth. The price in the usual wholesale quantities.

Sixth. The price at time of exportation.

Or it may be established by the following alternative proof:

First. The price the owner, etc., would have received, or,

Second. The price the owner, etc., was willing to receive: (*a*) When sold in the ordinary course of trade. (*b*) When sold in the usual wholesale quantities. (c) At the time of exportation.

From a consideration of said subsection, it does not seem essential that the goods must be sold, but is sufficient if the owner of them would have been willing to take a certain price for them if he had offered the same for sale. But it is essential that findings of fact be made under one or the other of the alternative methods above stated. The statute makes the existence of these facts essential to an ascertainment of the American selling price, and unless such facts exist, alternatively, no American selling price can be fixed. If it is sought to establish the American selling price by actual sales, then each of the elementary facts named in the first part of section 402 (f) must be shown to exist; if by probable price or willingness to receive, then each of the elementary facts enumerated in the latter portion of section 402 (f) must be shown.

If it is necessary to establish such facts, and if the failure to prove any one of them is fatal, then they are ultimate facts and this court, in reviewing the findings and conclusion of the court below, on questions of law only, should know whether such basic facts have been found by that court. We are not permitted to search the record and to ascertain whether such facts might have existed, and act upon our

own judgment of the facts as we find them to exist. We can only look to the findings of the board, and, subject to the limitations we have heretofore suggested in this opinion, pass upon their legal sufficiency to support the conclusion arrived at. For this reason, if for no other, the findings of facts by the board must be exact, and cover all essential and ultimate facts. In this case, an essential fact was whether the American competitive product had been freely offered for sale. Both litigants sought a finding thereon. The findings of the board are silent on this question. In the opinion of the court the parties litigant were entitled to a finding on that subject, that upon such a finding of fact, they might argue and have adjudged, in this court, upon appeal, if desired, the legal effect of the statutory language used by Congress and any other point to be properly raised thereon. A failure to do so must be considered as error.

For the reasons suggested, the cause is reversed and remanded for further findings of fact in conformity with this opinion.

*Reversed* and *remanded.*