UNITED STATES *v.* FRAGELE BROS. (No. 2564) [1]

1. FINDINGS OF FACT IN APPRAISEMENT APPEALS, UNDER SECTION 501, TARIFF ACT OF 1922—EVIDENCE TO SUPPORT.

The findings of fact which section 501, Tariff Act of 1922, directs the Board of United States General Appraisers to make in appraisement appeals must be supported by some substantial evidence, or they are reviewable as a matter of law.   In this respect they are analogous to special findings of a court under R. S. 649 and 700, and have the force and effect of a verdict.   *Kuttroff, Pickhardt & Co.* v. *United States,* 13 Ct. Cust. Appls. 17, T. D. 40861.   Such findings examined and found supported.

2. SAME—SUFFICIENCY.

The findings of fact made by the Board of United States General Appraisers in accord with the direction of section 501, Tariff Act of 1922, on value, as defined by section 402, were: First, that there was no domestic market; second, that the goods were freely offered for sale in the principal markets of the country they came from at a certain price; third, that the only value that there was for the goods was the export value; and, fourth, what the export value was.   They were sufficient.

3. APPRAISEMENT—FOREIGN TURNOVER TAX—DISCRIMINATION—EVIDENCE.

The country of origin imposed a general turnover tax on the goods at bar of 2 per centum unless sold by one of two preferred associations, in which case the tax was only one-half per centum.   It appearing that anyone, at any time, might buy from either of these associations, at the one-half per centum tax, either for home consumption or for export to any country, the board's finding that they were freely offered for sale is supported.   The judgment that the amount of tax in the appraised value should be one-half per centum, and not 2 per centum, is affirmed.

United States Court of Customs Appeals, June 15, 1925

APPEAL from Board of United States General Appraisers, decision of February 27, 1925

[Affirmed.]

*William W. Hoppin,* Assistant Attorney General (*J. G. Lerch,* special attorney, of counsel), for the United States.

*Comstock & Washburn* (*Geo. J. Puckhafer* of counsel) for appellees.

[1] T. D. 40978.

[Oral argument May 20, 1925, by Mr. Lerch and Mr. Puckbafer]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

This case was before this court on a former occasion as suit No. 2396. On November 28, 1924, after consideration of the matter, the judgment of the court below was reversed and the cause remanded with directions to the court below to state the findings of fact and reasons therefor as provided in paragraph 501 of the Tariff Act of 1922. The facts in the case are sufficiently shown in the opinion of the court filed therein. 12 Ct. Cust. Appls. 381, T. D. 40543.

Thereafter the cause was again docketed herein, under its present calendar number, and a supplemental transcript of record was filed on May 2. From this transcript it appears the court below, in response to our former mandate, filed herein, on April 27, 1925, the following decision:

Opinion by WAITE, G. A.: This case involves the question of the dutiable value of certain goods imported from Czechoslovakia. It was submitted upon the records in reappraisements 10366–A and 15815–A. The decision in 10366–A includes a certain turnover tax imposed by the laws of Czechoslovakia of 2 per centum, and in 15815–A it was decided that the turnover tax included in the dutiable value should be one-half of 1 per centum.

There is no question but that the law of Czechoslovakia provides for a 2 per centum turnover tax. It appears, however, that there are two associations of sellers and buyers, agents, commission men, etc., and by an arrangement between these organizations and the Government of Czechoslovakia the members of such organizations are permitted to buy and sell goods by paying only one-half of 1 per centum turnover tax instead of the 2 per centum mentioned above.

The laws governing these two conditions are the laws of Czechoslovakia and have reference to the tax in that country. The question here is as to whether the 2 per centum should be added to the invoice value of the goods or only one-half of 1 per centum.

A great many cases have come before the single general appraiser and the board wherein it has been found that only one-half of 1 per centum should be added. There is, however, one case, No. 10366–A, reported in Reappraisement Circular 3488, No. 34336, holding that the 2 per centum should be added. That case, however, was decided purely upon the record therein contained and turned upon the construction of certain evidence in that particular case. In that decision we said:

"We do not consider such restricted sales constitute an open market."

What was meant by that was that sales under such restrictions would not constitute an open market, but in the face of the whole record we conclude the sales were not restricted, but that the restriction or limitation applied to substantially all sales made, and hence was a rule and not an exception. Therefore we do not deem it controlling as to this case.

We are of the opinion that there is no domestic market for the merchandise here involved. Further, that the provision for the 2 per centum turnover tax was abrogated by the agreement between the Government of Czechoslovakia and the handlers of this commodity, as it appears that all sales made were with an addi-

tion of one-half of 1 per centum. The evidence is clear that anyone could buy upon that basis either for export or for home consumption, in the face of which condition it would be folly to assume that one would purchase and add 2 per centum. We therefore hold that the only market shown was the market for export and the dutiable value was the invoice price plus one-half of 1 per centum, affirming the decision of the single general appraiser.

It is assigned for error by the Government, in part, that the foregoing is not such a statement of findings of fact and "reasons therefor" as the statute requires; that this court can not ascertain, from a reading thereof, what the basis of the decision of the court below was; that the Board of General Appraisers should have found the value of the merchandise to have been the invoice value, plus the charges for cases and packing and 2 per centum for turnover tax; and that the board erred in finding the goods in question were freely offered for sale in the usual course of business and in the usual wholesale quantities.

When this cause was remanded for further findings, the court, speaking through Bland, J., said:

In this case the decision of the Board of General Appraisers does not disclose how it arrived at the conclusion that the invoice value should be sustained nor does it indicate whether it found the invoice to be the export value with the one-half of 1 per centum added, or whether it found that the export value included the one-half of 1 per centum, or whether it found the foreign value based upon sales made by the selling agencies in the home market of Czechoslovakia for home consumption, or whether it found the foreign value based upon sales made by the selling agencies or producers for export.

We might be better satisfied with a more exact and direct statement of findings of fact than that returned at this time in this case, but we are of opinion it sufficiently shows the various matters, on account of which the cause was remanded, for the purposes of a disposition of this litigation. It appears the board, in substance, found, first, that there was no domestic market for the imported goods at the time of export; second, that the said goods were freely offered for sale in the principal markets of this merchandise at the invoice value, plus one-half of 1 per centum for turnover tax; third, that the only value that existed for these goods at the time of export was the export value; fourth, that this export value was the entered value, which included cases, packing, and one-half of 1 per centum for turnover tax, imposed by the Czechoslovakian Government.

The appraiser's duty as to the valuation of this merchandise was fixed by section 402 of the Tariff Act of 1922. By that section he is directed to find, if such value exists—

the foreign value or the export value, whichever is higher.

The foreign value is thus defined by the statute:

(b) The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States,

at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

The export value is thus defined:

(c) The export value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States. If in the ordinary course of trade imported merchandise is shipped to the United States to an agent of the seller, or to the seller's branch house, pursuant to an order or an agreement to purchase (whether placed or entered into in the United States or in the foreign country), for delivery to the purchaser in the United States, and if the title to such merchandise remains in the seller until such delivery, then such merchandise shall not be deemed to be freely offered for sale in the principal markets of the country from which exported for exportation to the United States within the meaning of this subdivision.

Any valuation fixed upon imported goods, made by the appraiser of merchandise, by the single general appraiser, or by the Board of General Appraisers, under the Tariff Act of 1922, must be upon the basis of these provisions of law, if either the foreign or export value can be found.

The board having found the entered value, including cases, packing, and one-half of 1 per centum turnover tax, to be the export value and the export value to be the one properly to be applied to this importation, it remains to be seen whether there is any error of law in such finding.

We have recently held in *Kuttroff, Pickhardt & Co.* v. *United States*, 13 Ct. Cust. Appls. 17, T. D. 40861:

The findings of fact provided for in said section 501 should be measured by the same rule. If a finding of fact made by the board under this statute has no substantial evidence in the record to support it, the action of the board in making it is then reviewable as a matter of law. In this respect, such findings are analogous to special findings of a court under sections 649 and 700, Revised Statutes. Where such special findings of fact have been made, they have been held to have the force and effect of the verdict of a jury.

The inquiry then is: Is there any evidence in the record before us, which, if believed by the Board of General Appraisers, was legally sufficient to support its findings hereinbefore enumerated?

We believe, from an inspection of the record, there is. It appears there is a general turnover tax of 2 per centum imposed by the Government of Czechoslovakia on all so-called "Gablonz ware," unless

it is sold by one of the two preferred associations, the *Gremium der Exporteure* or the *Swaz*. The testimony and report of confidential government agent, Sigmund Neustadt, appearing in the record, show that goods may be purchased freely from either of these associations or their agents, by anyone, in any quantity, either for home consumption or export, at the current market price plus one-half of 1 per centum turnover tax.

This agent also testified as follows:

Q. Which is higher, the home consumption price or export price as given in the report, Mr. Neustadt?—A. I was unable to show that, your honor, because sales for home consumption are insignificant—I could not discover any sales for home consumption.

While other statements somewhat varying from this were made by Agent Neustadt, the above statement, if given full credit by the board, was sufficient legally to support its finding that there was no foreign market for this merchandise. The question of the credibility of such testimony and the weight to be given to it were questions for the board.

It is argued that goods are not freely offered for sale, within the meaning of section 402–4 (c), when they must be purchased through one of two marketing agencies to get the benefit of the one-half of 1 per centum turnover tax instead of the regular 2 per centum. If, however, as the board found, there was no domestic market for the goods, and anyone who desired might buy freely, at any time, without restriction, in the usual wholesale quantities and for any purposes, with the benefit of the reduced tax, then the board might well find the market was an open one for all practical purposes.

We are not unmindful of the argument presented that such arrangements as existed between these marketing associations and the Czechoslovakian Government might be developed to the point where they would produce a restricted and not an open market. If it became evident in such a case that an effort was being made with governmental assistance to evade, in whole or in part, the imposition of our customs duties by favorable, preferential, and discriminatory taxes on goods exported to the United States, which favorable preferential terms were not extended to the home foreign market, then we should not be hesitant in holding such arrangements to constitute a failure to "freely offer for sale." But the board found such a condition did not exist here.

Counsel for the Government cite *Goodyear Tire & Rubber Co.* v. *United States*, 11 Ct. Cust. Appls. 351, in support of their contention that the market in Czechoslovakia was not an open market. That case arose under the tariff act of 1913 and where different provisions of law were being construed. In that case it was shown that the importer had certain arrangements by which it absolutely

controlled the market for the particular imported product and determined for itself who could and who could not buy and handle the product. The court held, and properly so, in a well-considered opinion by Smith, J., that such a restricted and controlled market was not a free market, and that goods so sold were not freely offered for sale to all purchasers. That conclusion, under the circumstances in the case, was correct and presents an entirely different condition of affairs from that existing in the case at bar. Hence that case is not authority here.

There being, as we have seen, evidence upon which the findings of fact of the board may be supported, as a matter of law they should stand. The judgment of the Board of General Appraisers is therefore *affirmed.*