METZ & CO. (INC.) *v.* UNITED STATES (No. 2517) [1]

1. APPEAL FROM REAPPRAISEMENT REVIEW—EVIDENCE.

Section 501, Tariff Act of 1922, provides for an appeal from the judgment of a board of three United States general appraisers on review of a reappraisement by one general appraiser "to the United States Court of Customs appeals upon a question or questions of law only." The judgment will not be disturbed on the evidence if supported by some substantial evidence.

2. EVIDENCE, SUFFICIENCY ON REAPPRAISEMENT REVIEW—COMPARISON OF DYE TESTS.

The inquiry was whether or not a certain imported dye, largely used in combination with other dyes, was competitive with a certain domestic dye of the same character, under paragraph 28, Tariff Act of 1922. 400,000 milligrams of water, 5,000 milligrams of yarn, 17½ milligrams of the imported dye, and 12½ and 10 milligrams respectively of two other dyes produced the same or substantially the same results as 20 milligrams of the domestic dye and the same weights of the same other constituents. The board's finding that they produced substantially the same results when used in substantially the same manner, and were therefore competitive, was supported, the difference between 20 and 17½ milligrams of the tested dyes being small, in view of the large quantity of other constituents used. Nor does a variation of from 12 to 25 per centum in the weight of some of the other ingredients used necessitate a different conclusion. The paragraph does not require that the two dyes be compared by testing them without combining them with other dyes.

3. COMPETITIVENESS VEL NON OF DYES IS FOR APPRAISER.

The determination of whether or not an imported coal tar dye is competitive with a domestic dye under paragraph 28, Tariff Act of 1922, is an act of appraisement and not one of classification.

United States Court of Customs Appeals, January 18, 1926

APPEAL from Board of United States General Appraisers, G. A. 8897 (T. D. 40517)

[Affirmed.]

*Allan R. Brown* for appellant.
*William W. Hoppin,* Assistant Attorney General, for the United States.
*Thomas J. Doherty (De Vries, Doherty, Davis & Lamb* of counsel) *amicus curiae.*

[Oral argument October 27, 1925, by Mr. Brown, Mr. Hoppin, and Mr. De Vries]

Brfore GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BARBER, Judge, delivered the opinion of the court:

This is an appeal by importer under the provisions of section 501 of the Tariff Act of 1922 from a decision of the Board of General Appraisers in reappraisement. The case covers three separate appraisements but the issues involved are the same.

---

The imported merchandise is two finished coal-tar dyes called respectively alizarin blue black B and alizarin blue black BBB. They are dutiable under paragraph 28 of the act and were entered as noncompetitive upon the basis of the United States value as defined in paragraph (d) of section 402 thereof. The dyes were respectively appraised by the local appraiser upon the basis of the American selling price of dyes produced in the United States bearing the same names which were regarded as similar competitive articles under the provisions of the paragraph.

Upon appeal by importer, a single general appraiser sustained the action of the local appraiser and, on importer's further appeal, a board of three general appraisers sustained the single general appraiser.

That part of paragraph 28 necessary for consideration here provides that the appraisal of imported merchandise dutiable thereunder, shall be—

based upon the American selling price (as defined in subdivision (f) of section 402, title 4) of any similar competitive article manufactured or produced in the United States * * *. For the purposes of this paragraph any coal-tar product provided for in this act shall be considered similar to or competitive with any imported coal-tar product which accomplishes results substantially equal to those accomplished by the domestic product when used in substantially the same manner.

Section 501 provides for the various steps in appraisement proceedings and requires the appraisement board when appeal is taken to it to—

state its action in a written decision * * * setting forth the facts upon which the finding is based and the reasons therefor.

Such decision is declared to be final and conclusive upon all parties—

unless an appeal shall be taken by either party to the Court of Customs Appeals upon a question or questions of law only.

Appellant, admits here that the domestic dyes with which the Government claimed, and the single general appraiser and the board held, the imported dyes were competitive under paragraph 28, were being sold in the usual wholesale quantities in the principal market of the United States on or about the dates of the shipments here in question and at the appraised price.

It is agreed between counsel for the appellant and the Government that if the imported dyes are held to be competitive with the domestic dyes of the same names, the appraised value is correct and that if they are held to be noncompetitive therewith, the entered value is correct.

By permission of the court a brief was filed and argument made by an *amicus curiae* on behalf of domestic dye producers. The *amicus curiae* contends that the decision of the board should be affirmed.

The record comprises over 300 pages, a large part of which is devoted to evidence taken before the single general appraiser.

The imported dyes are in the form of a powder and are used in the coloring of yarns and cloth. They possess greater tinctorial strength than the domestic dyes with which they were compared.

At the trial of the case before the single general appraiser quite a large number of witnesses, among them expert colorists and dyers were called, some by the importer and some by the Government, and witnesses on both sides gave testimony as to how these dyes, both foreign and domestic, were used. Witnesses on each side produced many samples, which are before us, and which show the results produced by the use of the foreign as well as the domestic dyes, and much expert technical testimony was received showing how, in the opinion of the witnesses, such results compared.

It appears from the testimony that there are at least three general methods employed in the dye business by which dyes are tested and used, the bottom chrome, the after chrome, and the chromate, and some or all of these methods were employed in the tests made by the witnesses in this case.

In practical dyeing it is necessary to create a formula which gives the quantity or percentage of the dyes and other ingredients necessary to be used to produce a desired shade or color. This formula is passed to the dyer who makes a bath in a kettle in which are placed a quantity of water, the materials called for by the formula, and the article to be dyed. The kettle and its contents are then subjected to various heats for certain periods, according to the judgment of the dyer, in view of the color to be imparted to the article to be dyed.

In the tests made by importer's witnesses the same formula was employed in testing the imported and domestic dyes. The results of such tests were substantially different in the opinion of witnesses. In the tests made by the Government's witnesses the formulas employed, while containing the same ingredients, differed somewhat in the proportions thereof when the domestic dyes were tested from the proportions when the tests were made of the imported dyes but the results obtained were, in the opinion of witnesses, substantially the same, or the same.

The Board of General Appraisers in an exhaustive opinion carefully considered both the law and the evidence. It found in effect that the dyes in question are not used in the form in which they are imported; that each is a necessary ingredient to obtain certain shades when used in connection with other ingredients; that the use of the imported articles in connection with certain other ingredients produces a color or shade that the domestic article will not produce with the same ingredients; that witnesses who testified, though fair and honest, did not use the same formula to ascertain

whether or not the dyes were competitive; that the testimony indicated that each witness in testing the dyes had in mind certain results to accomplish; that strength, meaning durability or the extent of the shade, whether light or dark, whether it would constantly remain in the material dyed, was involved in the ascertainment as to whether dyes claimed to be competing accomplished the same results when used in the same manner; that by a slight change in the formula the same results can be obtained by the use of either the imported or the domestic dyes; that there is considerable difference in shades when these dyes are used on yarns and wool containing silk lines and on those materials entirely of wool; that to the naked eye there is a difference in some instances in the color produced on woolen yarns when subjected to the domestic dyes, from that produced when they are subjected to the imported dyes, but a change in the formula will cause a change in the results and that with such change it is practically impossible to ascertain a difference; that in practical dyeing it is necessary to change the formula in order to obtain satisfactory results; that from the same kettle and from the same bath two different results may be obtained on the same day; that in order to defeat this, formulas are changed daily; that the obtaining of the same shade or color frequently necessitates a slight change in the formula, which change is not of color but in the dye stuff and so slight as to be almost negligible when the weight of the material is considered.

Summing up its conclusions on the facts, the board said that the evidence satisfactorily established—

That the use of exactly the same proportions of the domestic and imported dye stuffs do not produce absolutely the same result; that to do so there must be a slight change in formula. When changed they do produce substantially the same result  *  *  *. It must be borne in mind that the domestic article is the basis of comparison and the color produced by the domestic formula is the criterion. The imported article will produce like results if the formula is slightly changed. This is entirely up to the dyer, and if with such slight change the results are the same, it is our judgment that each accomplishes the same result and are used substantially in the same manner.

It may be added that the testimony also establishes, as contended by the importer, that when used as self colors the imported dyes and the domestic dyes give different shades and that the domestic dyes can not be used for dyeing wool fabrics with a silk stripe, whereas, the imported dyes are satisfactory for that purpose.

It also establishes that the samples in evidence, when compared as to their fulling qualities and the fastness of the shades produced, although similar, are not identical. Also that the strength of the imported dyes is more uniform in succeeding shipments than the strength of the domestic dyes in succeeding productions.

In construing and applying paragraph 28 to the case here the board pointed out that the expressions "substantially equal" and "in

substantially the same manner" permit some latitude in determining whether or not the dyes are competitive, and cited the following authorities: *Machine Co.* v. *Murphy*, 97 U. S. 120; *Lowrie* v. *Meldrum Co.*, 124 Fed. 761; *Hobbs* v. *Beach*, 180 U. S. 383; *Schmieder* v. *Barney*, 113 U. S. 645.

It is unnecessary for us to quote therefrom because importer does not claim that the meaning given by the board to the word "substantially" is not correct.

Summing up its views as to the construction to be given to the above-quoted terms in paragraph 28 the board said:

We are required to apply to these terms the ordinary meaning. Keeping then in mind the domestic product as the criterion of comparison, the imported article accomplishes identically the same result when a certain formula is used. It accomplishes nearly the same result when the same formula that is applied to the domestic product is used. The change in the formula is but doing substantially what a business man would always do in the everyday affairs of life to accomplish a certain result.

The importer suggests, although the view is not much pressed, that the question of whether imported dyes and domestic dyes are competitive, is not one of appraisement and for the appraiser to determine, but is a question of classification to be determined by the collector.

This contention is not sound because it is obvious that to enable an appraiser to appraise the merchandise as directed in paragraph 28, he must first determine whether there is a similar competitive article manufactured or produced in the United States, because if so, the mandate of the statute is that the appraisal shall be based upon the American selling price of such article. Therefore, until he has determined that fact, he can not know what method of appraisement to adopt and, as the collector has no appraising function, it is clear that the duty is cast upon the appraiser to determine the question of competition in the manner provided in the statute.

Importer also contends that under the provisions of paragraph 28 imported and domestic dyes can not be regarded as competitive if, when used as self colors, they produce results that are commercially distinct, as in this case. Of this it may be said that if Congress had so intended, it were easy to have declared that the question of competition should be determined on that basis. Manifestly that was not the intent.

In this case it appears that both the imported and the domestic dyes *may* be, and to some extent *are*, used as self colors, but a large if not the chief use thereof is in combination with other dyes. To give the paragraph the interpretation claimed by importer would defeat rather than carry out the apparent congressional intent.

In *Kuttroff, Pickhardt & Co. (Inc.)* v. *United States*, 13 Ct. Cust. Appls. 203, T. D. 41054, it appeared that an imported dye was a more highly concentrated article, that is, of greater tinctorial strength, than the domestic dye claimed to be in competition therewith, and hence when used alone would produce results different from those produced by the domestic article. But this court held that that fact did not prevent competition provided the comparative tests were made in substantially the same manner upon materials to which both dyes might be actually, practically and commercially applied, regardless of whether or not they were chiefly so used.

It is unnecessary to consider seriatim the other contentions of importer. They are in substance that the finding of the board that the imported dyes are competitive with those of domestic production with which they are compared, is not warranted by the evidence because of which it is argued that its decision should be reversed.

Our power to do this depends upon the provisions of section 501. That section provides, as already pointed out, that its decision shall be final and conclusive upon all parties "unless an appeal shall be taken by either party to the Court of Customs Appeals upon a question or questions of law only."

In *United States* v. *Johnson*, 9 Ct. Cust. Appls. 258; *Kuttroff, Pickhardt & Co. (Inc.)* v. *United States*, 13 Ct. Cust. Appls. 17, T. D. 40861; *Johnson Co.* v. *United States*, 13 Ct. Cust. Appls. 373, T. D. 41318, which opinion is handed down concurrently herewith, we have definitely held that as matter of law the decision or finding of an appraisement tribunal under review here will not be disturbed, set aside or reversed if supported by some substantial evidence.

Our power to review such findings in appraisement cases is different from that in classification cases where we may reverse the board on findings of fact if they are without evidence to support them or contrary to the weight of the evidence. In other words, in classification cases we review the judgment of the Board of General Appraisers so far as the evidence is concerned, while in appraisement cases we are limited to the question of law as to whether or not there is any substantial competent evidence to support the findings made below.

But the importer strenuously insists that with reference to certain tests made by a witness for the Government, the results of which are somewhat vital to the case, it is clear that such changes were made in the formulas used, that it follows as matter of law that the foreign and domestic dyes were not used in substantially the same manner.

Three such instances are particularly referred to in importer's brief. They are substantially typical, and detailed reference to one

will suffice. With reference to that, the witness produced two exhibits resulting from the use of the imported and domestic dyes, which he testified he thought were substantially commercially equal. To obtain one exhibit he used 17½ milligrams of imported alizarin blue black B, 12½ milligrams of acid anthracene brown RHA, and 10 milligrams of erio chrome flavene A. To produce the other he used 20 milligrams of domestic alizarin blue black B, 12½ milligrams of acid anthracene brown RHA, and 10 milligrams of erio chrome flavene A.

At first blush this change in the percentage of the competing dyes seems somewhat impressive, but a little further consideration is required. The quantity of water in the bath in each case was 400 cubic centimeters and the material dyed weighed 5 grams. A cubic centimeter of water weighs a gram, and a gram is 1,000 milligrams (see Century Dictionary); hence in the bath in which the material, yarn, was dyed, the following conditions were present: In the first instance, there were 400,000 milligrams of water, 5,000 milligrams of material, 17½ milligrams of the imported dye, 12½ milligrams of acid anthracene brown RHA, and 10 milligrams of erio chrome flavene A, while in the second there were the same amounts of water and material and 20 milligrams of domestic alizarin blue black B, 12½ milligrams of acid anthracene brown RHA, and 10 milligrams of erio chrome flavene A; that is to say, using the language of the importer's brief:

To obtain the same shade with the domestic dye, he had to vary the proportions, increasing the amount of alizarin blue black B by 14 per centum.

The other tests especially relied upon by importer as impeaching the finding of the board were no different in principle from the one above recited, the variation in the quantity of the domestic and imported dyes employed being about the same, while the quantity of some of the other ingredients varied from 12 to 25 per centum.

This particular contention of importer, however, is manifestly shorn of much of its strength when the ratio of the weight of the differing amounts of the imported and domestic dyes and other ingredients employed in the tests is considered with relation to the total weight of the bath. And, if the case turned on these tests alone, we could hardly say that as matter of law the board erred in finding that the dyes were competitive notwithstanding the fact that the witness who made the test when asked—

Do you consider, as a dye expert, that a change in formula as to the amount of any one color used by weight of 15 to 20 per centum or more is a slight variation?

Answered, "No."

The decision of the board, however, does not rest wholly upon these tests.

The board in its opinion quotes freely from the evidence upon which it rests its findings. We have carefully examined, not only that which is quoted, but the entire record as well. To include excerpts from the testimony of witnesses sufficient to demonstrate that there is substantial evidence to sustain the findings of fact made by the board would extend this opinion to an unnecessary length. Suffice it to say, therefore, that although the testimony is conflicting in important respects, there is substantial evidence to support all the findings of the board, and on the whole record we discover no reversible error of law in the case.

The decision of the Board of General Appraisers is, therefore, approved, its finding as to the dutiable value of the imported merchandise is sustained and its judgment *affirmed.*