UNITED STATES *v.* INTERNATIONAL FORWARDING CO. (No. 2587) [1]

1. APPEAL FROM REAPPRAISEMENT REVIEW—SUFFICIENCY OF EVIDENCE.

An appeal to this court from a review by the Board of United States General Appraisers of a reappraisement is on questions of law only, and only on such as are properly assigned as error; and the judgment will not be disturbed if there is any substantial evidence in the record to support it. With evidence conflicting, it is affirmed.

2. "DECISION" IN REAPPRAISEMENT REVIEW EMBRACES JUDGMENT.

While, generally and abstractly, a decision is the findings on law and fact and a judgment is the application of the decision to the rights of the parties, legislatures frequently use the word decision to mean both. *Roessler & Hasslacher Chemical Co.* v. *United States,* 13 Ct. Cust. Appls. 451; T. D. 41347. It is so used in section 501, Tariff Act of 1922, providing for an appeal to this court from the "decision of the Board of General Appraisers" in a reappraisement review.

3. "JUDGMENT," SECTION 198, JUDICIAL CODE.

Section 198, Judicial Code (1911), provides for an appeal to this court from the "decision" of the Board of United States General Appraisers "within sixty days next after the entry of such decree or judgment." Strict formality is not essential to the validity of a judgment, and, if the entry of record shows with certainty that the matters at issue have been finally adjudicated, the nature of the relief granted, and that the rights of the parties have been finally determined by a formal sentence of the law upon the issues in the case, such entry is sufficient to constitute a judgment; and a judgment may be incorporated in a written finding or decision. No formal judgment was entered by the board, but its decision, signed by each member, was entered, and contained the following language: "We therefore find that the single general appraiser was in error in arriving at the finding he did as to value. His judgment is reversed, and the entered values sustained." Such entry was sufficient under the section, though unusual and not indorsed.

4. APPRAISEMENT—CONTROLLED MARKET.

Where it is shown that a domestic purchaser owned and controlled the foreign sellers and fixed the prices of the merchandise, such prices are not evidence of market value within section 402 (b) and (e), Tariff Act of 1922. See *Goodyear Tire & Rubber Co.* v. *United States,* 11 Ct. Cust. Appls. 351, T. D. 39158.

5. EVIDENCE IMPROPERLY CONSIDERED—ERROR WITHOUT INJURY.

Where an affidavit, properly excluded by the Board of United States General Appraisers, was considered by it in its decision, there was error, but, since there was sufficient evidence without it to support the judgment, there was no injury.

[1] T. D. 41436.

United States Court of Customs Appeals, February 25, 1926

APPEAL from Board of United States General Appraisers, Circ. Reap. 35552

[Affirmed.]

*William W. Hoppin* and *Charles D. Lawrence*, Assistant Attorneys General (*John G. Lerch* and *John A. Kemp*, special attorneys, of counsel), for the United States.
*Comstock & Washburn* (*J. Stuart Tompkins* of counsel) for appellees.

[Oral argument December 8, 1925, by Mr. Lerch and Mr. Tompkins]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the Board of General Appraisers in reappraisements 21647–A, 21649–A, 21862–A, 22162–A, 22163–A, 22594–A, and 22595–A.

The merchandise involved consists of earthenware closet bowls and brass spuds. It was purchased by the Crane Co., of Chicago, Ill., from the Canadian Potteries (Ltd.), of St. Johns, Quebec (owned and controlled by the Crane Co.), at prices fixed by the vice president of the Crane Co., who, it appears, was also at that time vice president of the Canadian corporation.

The merchandise was shipped during the months of August, September, and October, 1923, by the Canadian Potteries (Ltd.) in pursuance to the order of the Crane Co., of Chicago, to the International Forwarding Co., of Chicago, Ill.; the Crane Co., of Cincinnati, Ohio; the Crane Co., of Kansas City, Mo.; and the Central Vermont Railway Co., of St. Albans, Vt., for the account of the Crane Co., of Chicago. The invoice prices and the entered values in each instance corresponded to the prices fixed by the Crane Co., of Chicago, in the "order PD–703," dated "April 4, 1923," identified in the record as a part of "collective Exhibit 2." The exhibit reads as follows:

CHICAGO, *April 4, 1923.*

Mr. R. E. ELLIOT,
    *Manager, Canadian Potteries Co., St. Johns, Quebec.*

ORDER PD–703

DEAR SIR: Referring to our letter of March 23, file H–1105, and your reply of March 31, we give you below revised prices at which this material is to be billed to Crane Co.—

| | | |
|---|---|---|
| 500 | "Mauretania" for 2-inch spud, inc. spud and crate_____ | $10. 05 |
| 300 | "Mauretania" 1½-inch side supply, jet, and extended lip (to be stamped "Spiro"), inc. spud and crate_____ | 11. 82 |
| 500 | "Saneto" 1½-inch spud, inc. spud and crate_____ | 11. 30 |
| 200 | "Saneto" 1½-inch spud, extended lip, inc. spud and crate_____ | 12. 30 |

| | | |
|---|---|---|
| 1000 | "Saneto" 2-inch spud, inc. spud and crate_____ | $11. 30 |
| 200 | "Saneto" 2-inch spud, extended lip, inc. spud and crate_____ | 12. 30 |
| 500 | "Corsyn," including spud and crate_____ | 16. 30 |
| 500 | "Purus," extended lip, including spud and crate_____ | 14. 30 |

You will please use extreme care in making out any invoices, packing lists, and manifests to see that they read "Plumbers' White Earthenware" and also see that the packages are properly numbered and that the invoices check with the prices as given above.

The above are the final compromise prices as given us by Mr. Berryman.

   Yours truly,

                CRANE CO.,

               By _____,

               J. A. FARLEY,

          *Manager Plumbing Department.*

JAF:H:1000.

Copy to Montreal.

Copy to Boston.

Copy to New York.

The final compromise prices, set forth in "collective Exhibit 2" were fixed by the vice president of the Crane Co., of Chicago, after representatives of the two companies had engaged in correspondence on the subject over a period of several weeks. They were greater than those originally suggested by the Canadian company, but were less in some instances than those finally requested by that company

Reappraisements 21647–A, 21649–A, 21862–A, 22162–A, and 22163–A were appeals by the several collectors of the ports of entry. Reappraisements 22594–A and 22595–A were appeals by the importer, the Central Vermont Railway Co., one of the appellees herein.

In the first five mentioned cases the merchandise was appraised by the several local appraisers at the entered values. In the last two mentioned cases the local appraiser at the port of entry appraised the merchandise at higher values than those stated in the entries.

The general appraiser affirmed the appraised values in importer's appeals 22594–A and 22595–A, and advanced the entered and appraised values in each of the collector's appeals, viz, 21647–A, 21649–A, 21862–A, 22162–A, and 22163–A. The Board of General Appraisers, on review, reversed the several judgments of the general appraiser and sustained the entered values in each case.

An appeal to this court may be taken in reappraisement cases pursuant to the provisions of section 501 of the Tariff Act of 1922, the pertinent part of which reads as follows:

SEC. 501. * * * The decision of the Board of General Appraisers shall be final and conclusive upon all parties unless an appeal shall be taken by either party to the Court of Customs Appeals upon a question or questions of law only within the time and in the manner provided by section 198 of an act entitled "An act to codify, revise, and amend the laws relating to the judiciary," approved March 3, 1911.

This being an appeal in a reappraisement case this court may consider questions of law only, and only such as are properly presented by the assignment of errors filed in the case in this court. *Ishimitsu Co.* v. *United States*, 12 Ct. Cust. Appls. 477, T. D. 40672; 3 C. J., sec. 1462 et seq. See also rule 5 of the rules of this court. We have repeatedly held in reappraisement cases that, if there was any substantial evidence in the record to support the decision or finding of the Board of General Appraisers, such decision or finding would not be disturbed by this court. *United States* v. *Johnson Co.*, 9 Ct. Cust. Appls. 258, T. D. 38215; *Kuttroff, Pickhardt & Co. (Inc.)* v. *United States*, 13 Ct. Cust. Appls. 17, T. D. 40861; *Johnson Co.* v. *United States*, 13 Ct. Cust. Appls. 373, T. D. 41318; *Sandoz Chemical Works* v. *United States*, 13 Ct. Cust. Appls. 466, T. D. 41365; *Metz & Co. (Inc.)* v. *United States*, 13 Ct. Cust. Appls. 412, T. D. 41340.

At the time this case was orally argued in this court, it was suggested that the board had failed to enter a judgment in the case. Later, counsel for the Government filed a supplemental brief in which the following statement appears:

Upon question 1, the court inquired of counsel whether in the absence of a judgment order rendered by the Board of General Appraisers any valid appeal had been taken to this court. It is not denied that under the Judiciary Act the time for appeal to the Court of Customs Appeals runs 60 days after issuance of final decree or judgment by the Board of General Appraisers. It is also admitted that the Board of General Appraisers in this case has issued no judgment order, as such, in connection with its decision of March 18, 1925. Unless the last two sentences of the Board's opinion can be so construed as to amount to a judgment order or final decree, the statute has not been complied with. These sentences read as follows:

We therefore find that the single general appraiser was in error in arriving at the finding he did as to value.
His judgment is reversed, and the entered values sustained.

It will be noted that section 501, *supra*, provides that an appeal may be taken to this court from a decision of the Board of General Appraisers within the time and in the manner provided by section 198 of the Judicial Code, approved March 3, 1911.

Section 198 of the Judicial Code provides that an appeal may be taken "within sixty days next after the entry of such decree or judgment."

Manifestly, in order to give this court jurisdiction, the appeal must be taken from a decree or judgment of the Board of General Appraisers, and the time within which such an appeal may be taken commences to run from the date of the entry of such decree or judgment.

In the case of *Roessler & Hasslacher Chemical Co.* v. *United States*, 13 Ct. Cust. Appls. 451, T. D. 41347, we said:

Generally and abstractly there is a difference between the meaning of the word "judgment" and that of the word "decision." Such distinction has been expressed as follows:

The decision is the resolution of the principles which determine the controversy; the judgment is the formal paper applying them to the rights of the parties. Abbot Law Dictionary, 351.

A "decision" has been held to be the written statement of the court's findings of fact and conclusions of law, upon which its judgment is founded. 18 C. J. 28; 33 C. J. 10531.

Frequently, however, in legislation, the word "decision" is intended to embrace both the formal judgment of a court and the decision, or finding, upon which the judgment was founded. 18 C. J. 29.

Section 515, supra, provides that the Board of General Appraisers shall transmit to the collector "the decision and judgment order thereon."

Congress, therefore, in protest cases before the board, has provided for a written decision and a judgment order. It would seem, therefore, that the decision of the board should contain, at least, the conclusions of the board as to the facts in the case and the principles of law applicable thereto. The judgment of the board is intended to carry its decision into effect and to apply the principles announced therein to the rights of the parties. Therefore the decision, or written opinion, as it is frequently called, should state the reasons upon which its judgment is based. However, such decision or opinion is no part of the judgment, and, if there is a variance, the judgment controls and must be considered as determining the rights of the parties. 33 C. J. 1104.

We think that the word decision in section 501, *supra*, was intended by the Congress to embrace both the decision or finding and the formal judgment of the board, and, therefore, the rendition of judgments and the entry thereof are as necessary in reappraisement cases as in protest cases. We proceed, therefore, to consider whether the entry in this case is sufficient as an entry of a judgment.

A judgment is the sentence of the law upon the issues of law and fact involved in the action and finally determines the rights of the parties. 33 C. J. 1049, 1051; Black on Judgments, vol. 1, second ed., sec. 1. However, strict formality is not essential to its validity, and, if the entry of record shows with certainty that the matters at issue have been finally adjudicated, the nature of the relief granted, and that the rights of the parties have been finally determined by a formal sentence of the law upon the issues in the case, such entry is sufficient to constitute a judgment. 33 C. J. 1188 et seq.; Black on Judgments, vol. 1, second ed., sec. 115; *Smith* v. *Smith*, 247 Fed. 461. Moreover, a judgment may be incorporated in a written finding or decision. 33 C. J. 1195; *Morgan* v. *Eggers*, 127 U. S. 68.

It will be noted the finding of the board is concluded with the following sentence:

We therefore find that the single general appraiser was in error in arriving at the finding he did as to value.

The record entry, however, is not concluded with the quoted statement of the court's findings. The last sentence incorporated therein is as follows:

His judgment is reversed, and the entered values sustained.

Applying the foregoing principles to the record entry in the case, we are of opinion that the entry shows with certainty the nature of the relief granted, that the rights of the parties have been finally determined, and that the issues involved in the appeals have been finally adjudicated. While the judgment is incorporated in the written decision or finding, it is not for that reason invalid. The entry was signed by each of the judges of the court and was plainly intended as a final decision and judgment in the case. We do not wish, however, to be understood as indorsing this rather unusual method of entering judgments. With these preliminary observations, we proceed to a consideration of the issues involved in the appeal.

It is contended in the briefs by counsel for the Government that there were sales by the Canadian Potteries (Ltd.) to Crane (Ltd.), of Canada, of like merchandise at prices higher than the entered values of the involved merchandise; that such sales were made in the ordinary course of trade and correctly represented the market values of the merchandise in Canada; that the order of the Crane Co., of Chicago, was unusual and not made in the ordinary course of trade, and that the invoice values do not represent the market values of the merchandise in Canada; that there is no evidence in the record to sustain the findings of the board, and that the findings and judgment of the board are contrary to the evidence. In addition to these claims, the assignment of errors contains in substance the following contentions: That the board erred in holding that the Canadian Potteries (Ltd.) and Crane (Ltd.) were owned and controlled by the Crane Co., of Chicago, and that the relationship of the parties "entered into the transaction;" and, that the board erred in holding that the two Canadian companies did not sell like or similar merchandise in Canada in the usual wholesale quantities and in the ordinary course of trade.

The witness, John A. Farley, testified positively that the Crane Co., of Chicago, owned and controlled the stock of the Canadian Potteries (Ltd.), of St. Johns, Quebec, and Crane (Ltd.), of Montreal; that the prices at which the involved merchandise was sold to the Crane Co., of Chicago, were fixed by a Mr. Berryman, who, at the time, was vice president of each of these three companies; that the involved merchandise was not offered for sale in Canada to all purchasers, but was manufactured by the Canadian Potteries (Ltd.), exclusively for the Crane Co., of Chicago, and its Canadian and American branches; that this merchandise was not sold by the Canadian

branches of the Crane Co., of Chicago, to jobbers, but to the retail trade only; that the prices at which this merchandise was sold in Canada and in the United States were fixed by the parent company; that this merchandise was purchased from the Canadian Potteries (Ltd.), only because of the existence of a strike of the employees of the pottery manufacturers in the United States, which prevented the Crane Co., of Chicago, from securing the merchandise in question from the American branch which ordinarily manufactured it; that the purchase and sale of this merchandise was conducted on a basis of debits and credits, no money passing between the parties to the transaction; that, in 1923, similar closet bowls were being imported from England and sold in the Canadian markets, with duty and freight paid, at prices 10 per centum lower than the entered values of the merchandise in question in this case; that, if the Canadian Potteries (Ltd.) sold articles like those in question to Crane (Ltd.), of Montreal, at higher prices than those fixed by the Crane Co., of Chicago, such sales were made without the knowledge of the witness and contrary to the instructions of the Crane Co.

It clearly appears from the evidence that the Crane Co., of Chicago, owned and controlled the Canadian Potteries (Ltd.) and Crane (Ltd.), of Montreal; that the relationship of the parties, not only entered into the transaction, but was the controlling factor therein, and that the prices at which the Canadian companies sold their products in Canada were controlled by the parent company and fixed by that company in most instances. It further appears that the merchandise involved in this case was not freely offered for sale to all purchasers in the principal markets of Canada in wholesale quantities, but was manufactured exclusively for the Crane Co. and its branches in Canada and in the United States and sold by the Canadian companies in Canada to the retail trade only. Such sales do not constitute a market value within the provisions of subsections (b) and (c) of section 402 of the Tariff Act of 1922. Those subsections provide that the foreign or export value of imported merchandise "shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade," including the cost of containers and other costs.

It will be observed that the statute provides that the merchandise must be freely offered for sale to all purchasers in the usual wholesale quantities and in the ordinary course of trade. Accordingly, the prices at which merchandise is sold to a limited number of favored purchasers, or to the retail trade only, in quantities greater or less than the usual wholesale quantities, would not be proper evidence of

the market value of such merchandise. Such prices are not those at which such merchandise is *freely* offered for sale to *all purchasers*, in the *usual wholesale* quantities and in the *ordinary course of trade*. *Goodyear Tire & Rubber Co. v. United States*, 11 Ct. Cust. Appls. 351, T. D. 39158.

A report of a special agent for the Government is in the record and identified as Exhibit 1. This report contradicts a portion of the testimony of the witness Farley. However, it substantiates his testimony in some material respects. For illustration the report contains the following significant statement: "Such goods as were included in this order, are as I understand it, only sold in Canada to the Crane (Ltd.) branches and are called Crane specialties. The Canadian Potteries also make goods for other American manufacturers for their Canadian trade but the patterns are different. For this reason I was unable to get copies of sales to other Canadian purchasers than Crane (Ltd.)."

Some sales of like merchandise were made by the Canadian Potteries (Ltd.) to Crane (Ltd.), Montreal, according to this report, at higher prices than those contained in the invoices and entries of the appellees. However, for the reasons previously stated, we think these prices do not represent the market values of the merchandise in Canada.

An affidavit, Exhibit 6, was introduced in evidence. It was stated in this exhibit that a bowl, similar to one of those involved in this case, was freely offered for sale and sold in the usual wholesale quantities in Canada at a price less than that at which the imported bowl was entered.

The Government introduced in evidence Exhibits 12, 13, and 14. These are additional reports of the special customs agent. Some of the statements contained therein flatly contradict a portion of the testimony of the witness Farley. However, there is some substantial evidence to show that the merchandise was not freely offered for sale in the usual wholesale quantities and in the ordinary course of trade in Canada, and that similar merchandise was sold in the Canadian markets at prices less than the entered values of the merchandise in question.

We are of opinion that there is some substantial evidence in the record to support the findings of the board. It must be admitted, however, that there is evidence in the record, which, if accepted by the board, would have been sufficient basis for contrary findings. But we are not called upon in this case to weigh the evidence.

An affidavit of one George F. Clare was considered in the opinion of the board. We find from the record that this document was not admitted in evidence by the trial court. It does not contain any competent evidence of market value in Canada, and was properly

excluded. It ought not to have been considered by the board on review. However, with the affidavit excluded, there is sufficient evidence in the record to support the board's findings. Therefore, while the board erred in giving it consideration as evidence, such error was not, in our opinion, prejudicial to the rights of the appellant. Counsel for the appellant have argued orally, and in their briefs, that error prejudicial to the appellant was committed by the trial court in the admission and rejection of testimony. However, as such rulings of the trial court were not assigned as error in this court, we are unable, for the reasons hereinbefore stated, to give such questions consideration.

The judgment is *affirmed.*