JOSE A. MONTEMAYOR E HIJOS, F. VIZCAYA, R. J. SCARBOROUGH, AND FIDEL GONZALEZ *v.* UNITED STATES (No. 3937)[1]

United States Court of Customs and Patent Appeals, April 20, 1936

*Philip A. Kazen, Neel & King* (*Philip A. Kazen* and *Nat B. King* of counsel) for appellants.

*Joseph R. Jackson,* Assistant Attorney General (*John F. Kavanagh,* special attorney, of counsel), for the United States.

[Oral argument April 6, 1936, by Mr. Kavanagh; submitted on brief by appellants]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

Five entries of Mexican cattle hides were made at the port of Laredo, Tex., from June 29 to July 31, 1933, inclusive. The im-

[1] T. D. 48288.

porters, as shown by the entries, were H. L. Spindle, F. Vizcaya, for J. A. Montemayor, F. Vizcaya, and F. Vizcaya, for R. J. Scarborough. Four of these entries covered green salted hides, while one, 28–L, covered three items, namely, dry beef hides, dry bull hides, and damaged dry beef hides. This entry is involved in reappraisement No. 106560–A, hereinafter referred to. The entered values are given by appellants as follows:

| Reappraisement Number | Entered value | Appraised value |
|---|---|---|
| 106559–A | $0. 035 | $0. 06052 lb. |
| 106560–A | . 045 (Avrg.) | |
| 106561–A | . 039 | $\begin{cases} .\ 05908 \text{ lb.} \\ .\ 05 \text{ lb.} \end{cases}$ |
| 107338–A | . 035 | . 049075 lb. |
| 107339–A | . 035 | . 04277 lb. |

The goods involved in reappraisements 106559–A, 106561–A, 107338–A, and 107339–A were appraised by the local appraiser at the various amounts shown by the above tabulation. More extended observations will be made hereinafter as to the appraisement in 106560–A. All appraisements were made by the local appraiser upon the basis of export value.

The importers appealed to reappraisement. After consolidation of the causes for trial, considerable evidence was offered, including the testimony of Jose A. Montemayor, Francisco Vizcaya, and R. J. Scarborough, on behalf of the importers, and Garland H. Williams and A. F. Scharff, customs agents, on behalf of the Government. The importers introduced, also, the affidavit of J. S. Farias, assistant manager of the Chamber of Commerce of Monterrey, Mexico, the joint affidavit of five Mexican citizens, Juan M. Garcia, Antonio Guerra, Juan M. Gonzalez, C. F. Montemayor, and Arnulfo S. Garza, and the joint affidavit of Jesus M. Saldana, Arnulfo S. Garza, and Juan M. Gonzalez. In addition, the Government offered in evidence three reports, one being made by Customs Agent Garland H. Williams, dated September 12, 1933, one by Acting Supervising Customs Agent Henry A. Norman, dated October 4, 1933, and one by Customs Agents A. F. Scharff and Garland H. Williams, dated April 12, 1934.

The matter came on to be heard before Judge Sullivan, who found that there was a foreign value for the imported goods, with no higher export value, and that the foreign value was less than the entered value, and that, therefore, the dutiable value was the entered value, in each instance.

The Government applied for a review, and the matter was heard by the Third Division of the United States Customs Court. The appellants moved "to dismiss the application for a review", alleging that the Government had not complied with rule 46 of the United States

Customs Court, by failing to file a brief statement in writing of the grounds of appeal. This motion was denied by the division. On December 27, 1934, the Government filed its assignment of errors, alleging fourteen errors. On December 26, 1934, the importers filed a motion to set aside the court's order denying their former motion to dismiss, alleging that they had not had sufficient notice of the hearing thereon under the rules of the court. This motion, also, was denied. No errors have been assigned herein upon the action of the court in denying said motions, and no further attention need, therefore, be given the same.

The Third Division considered the case and has embodied its findings in an exhaustive opinion written by Evans, Judge. The first matter engaging the attention of the appellate division was the contention made by the importers that the assignment of errors filed by the Government was insufficient under rule 46 of said court. This assignment was as follows:

The Trial Judge below erred:

1. In finding and holding the dutiable value of the merchandise herein to be the entered values.

2. In finding the entered values of the merchandise herein to be the foreign value.

3. In finding a dutiable value for the merchandise herein based upon foreign value as provided for in Section 402 (c) of the Tariff Act of 1930.

4. In not sustaining the appraised values of the merchandise herein.

5. In not finding and holding that export value as defined in Section 402 (d) of the Tariff Act of 1930 was the proper dutiable value of the merchandise herein.

6. In not finding and holding that the export value of the merchandise herein was the appraised values thereof.

7. In not finding and holding that there was an export value for the merchandise herein which export value was higher than the foreign value.

8. In entering judgment herein contrary to the record, the law, the evidence, or the weight of evidence.

9. In not finding and holding that the plaintiffs in the court below (appellees herein) failed to prove the foreign value of the merchandise.

10. In not finding and holding that the record sustained the appraised values (export value) of the merchandise herein.

11. In not giving sufficient consideration or weight to the proof or evidence contained in Exhibit 9 admitted in evidence herein.

12. In admitting in evidence, over objection and exception, Exhibits 1, 2, 3, 4, 5, 6, 7, and Collective Exhibit 8 and giving probative value to the said exhibits.

13. In not finding and holding that the record herein failed to overcome the presumption of correctness of the appraiser's action as provided under Section 501 of the Tariff Act of 1930.

14. In failing to dismiss the appeals to reappraisement herein because plaintiffs in the court below (appellees herein) failed to uphold their contention or claim by competent and sufficient legal proof.

Said rule 46 is as follows:

46. ASSIGNMENT OF ERRORS AND PROPOSED FINDINGS IN REAPPRAISEMENTS,
The appellant or his attorney in proceedings for review in reappraisement cases shall, not less than 15 days prior to the day on which the case is set for trial.

file with the clerk of the court, and serve upon the opposing party or his attorney, a brief statement in writing of the grounds of his appeal, setting forth in concise form any question of law which he considers the lower court may have decided erroneously, and if the appeal was taken on a question of fact, a brief statement of the facts upon which he contends the court erred.

Both parties shall, concurrently, not less than 5 days prior to the day the cause is called for hearing, file briefs (three copies of each) with the clerk of the court and serve a copy thereof upon the opposing party or his attorney.

Upon failure of the parties to comply with the foregoing rule, the court may in its discretion dismiss such appeal.

Oral argument may be made by either or both parties on such hearing. Such oral argument, if any, shall not be transcribed, unless otherwise ordered by the court.

In objecting to the sufficiency of the Government's assignment of errors, the importers' counsel called attention to the rules on that subject which have been adopted by the various United States Circuit Courts of Appeals, and cited authorities holding assignments to be deficient under such rules. As to this, the appellate division said, in part:

Because the assignment of errors quoted above might be held deficient according to the decisions cited under the foregoing rule of the Circuit Court of Appeals, it does not necessarily follow that they are defective within the contemplation of Rule 46 of this court.

Appellee further urges that the errors assigned are too numerous to warrant consideration in that they simply allege in fourteen different forms of language, the same thing, that is, that the judgment of the court below was in error, and so are only general assignments and do not comply with Rule 46. Again he cites a long list of Federal cases in support of his proposition. The observation of the court as to the practice which has prevailed here convinces us that the rule against numerous assignments of error has not, much to our regret, been invoked in this jurisdiction. * * *

*      *      *      *      *      *      *

As to the proposition that a general assignment of errors will not comply with Rule 46 we remark that the question involved in reappraisement cases is different from questions that arise in any other sort of a lawsuit in this, that the statute defines various types or kinds of value that shall be used in order as provided therein, for the valuation of ad valorem duty merchandise which enters the United States. An assignment of errors to the effect that the court was wrong in selecting one type of statutory value as against another must necessarily be general in terms. However, such an assignment does bring in every element, it seems to us, that is required to be established by statute, and therefore goes to the entire record insofar as the record covers testimony bearing on value. It would, therefore, be a waste of time to require, under this assignment, that the attorney set out every bit of evidence on which he relied when the evidence itself constitutes a part of the bill of exceptions as we shall presently show.

It was also urged that said assignments were insufficient, inasmuch as errors of law were not therein separated from errors of fact, and that assignments 1, 2, 3, 4, 5, 6, 7, and 13 were too general and failed to designate wherein the evidence was insufficient. Various other similar contentions were made as to said assignment. The appellate

division was of opinion that assignment 11, and a part of assignment 12, were insufficient, and that assignment 14 would not lie because of failure of the Government to move to dismiss the appeal at the close of importers' case. As to the remaining assignments, the appellate division failed to concur in the view of the importers, contenting itself with the observation:

As we have heretofore stated, the assignment of errors in a reappraisement case must in the nature of things be couched more or less in the specific terms of the statute which to a general practitioner may sound as though they were but general exceptions or assignments. This practice has existed for a considerable length of time and, aside from the fact that it must necessarily be so, there is no inherent hardship such as exists in other classes of cases in other courts where records inevitably are longer than any record in any reappraisement case which has come under the observation of the court.

We find ourselves in agreement with the conclusion of the appellate division as to the sufficiency of the Government's assignments of error. The same refinements of reasoning and technical rules cannot be indulged in customs litigation, and, especially, in reappraisement proceedings, that obtain in general litigation under the rules of the various federal circuits and of the Supreme Court. The rules of the United States Customs Court and of this court allow more liberality in order that the purpose of the creation of these courts may be accomplished, namely, a speedy litigation of contested matters between the Government and the taxpayer, with a minimum of technical requirements. Take, for instance, the second assignment, that the trial court erred in finding the entered value to be the foreign value. It is difficult to imagine how such an assignment could be made more definite. The appellate division was required to determine, from the entire record, whether the entered value was the foreign value; hence greater particularity was unnecessary.

In our view of the matter, the appellate division did not err in its holding as to said assignments of error.

The appellate division, in the first instance, reversed the judgment of Judge Sullivan as to all of the entries except entry 28–1, reappraisement 106560–A, which the court found should have been returned to the appraiser with directions that he make an appraisement, according to law. As to this appraisement, the court found that the appraiser had failed to appraise the goods in the unit of quantity, as provided by section 500 (a) (1) of the Tariff Act of 1930, but had appraised the same in lump sums. Commenting upon the judgment of Judge Sullivan upon this entry, the division remarks that it is unable to find, in the record, the figures upon which he based his calculations of value.

Following the judgment of the Third Division, the importers applied for a rehearing as to all reappraisements except 106560–A, which rehearing was denied. The Government, on its part, applied

for a rehearing as to said reappraisement 106560–A. The Government's application is supported by the affidavits of C. M. McDaniel, acting appraiser at the port of Laredo, Tex., and Edward Cotulla, Assistant Collector of Customs at the port of San Antonio, Tex. The affidavit of McDaniel states that he appraised the goods involved in reappraisement 106560–A; that the goods were entered for duty by the consignee on the original invoice, which was attached to the affidavit; that the appraisement was made in the units of quantity and noted on said invoice by affiant at the time; that all these papers were duly sent to the Collector of Customs at San Antonio, Tex. The invoice attached to the affidavit verifies these statements.

The affidavit of Cotulla, the assistant collector, verifies the statement of McDaniel, admits the receipt of the said original invoice with said notations thereon, and states that upon the filing of the appeal, in sending the papers to the United States Customs Court, he failed to send the original invoice and retained it in his office, and sent, in lieu thereof, a triplicate of said original invoice.

The importers moved to strike this petition for rehearing from the files, which motion was denied.

The appellate division thereupon granted a rehearing as to said reappraisement 106560–A, and, finding that the original record before the court was incomplete, amended its former judgment by ordering a reversal of the judgment of Judge Sullivan as to said reappraisement 106560–A.

This action is assigned for error by appellants. It is insisted that this constituted a retrial on *ex parte* affidavits, and our decisions in *Brown & Co.* v. *United States*, 12 Ct. Cust. Appls. 26, T. D. 39895, and *Rietmann-Pilcer Co. et al.* v. *United States*, 16 Ct. Cust. Appls. 152, T. D. 42782, are cited as supporting that position. In the *Brown* case, *supra*, an examiner attempted to file an affidavit showing what his intentions were in making a certain interlineation. This was held to be extra-official and improper. In the *Rietmann-Pilcer* case, *supra*, an effort was made by affidavit on request for rehearing to prove who was the actual importer. It was held to be no abuse of discretion to deny this request.

The allowance of a rehearing is a matter of discretion with the United States Customs Court, when sitting as an appellate division. As such, it will not be reviewed by us unless it clearly appears there has been an abuse of discretion. *Monroe-Goldkamp Co.* v. *United States*, 13 Ct. Cust. Appls. 545, T. D. 41429, and authorities therein cited. A very broad discretion is vested in that court, in this respect, by the statute, section 518, Tariff Act of 1930:

\* \* \* A division of the court deciding a case or a single judge deciding an appeal for a reappraisement may, upon the motion of either party made within thirty days next after such decision, grant a rehearing or retrial of such case, when in the opinion of such division or single judge the ends of justice so require.

The appellate division was not in error in allowing such rehearing.

We come now to a consideration of the judgment of the appellate division, on the merits. There is a very lengthy discussion, on the part of the appellants, as to the correctness of the finding of the division upon values, and as to whether such conclusions are or are not against the weight of the evidence in the record. As to that, we have nothing to do. By law, the appellate division may judge the facts and the law—when the case arrives here, we may determine questions of law only. Therefore, the rule has been followed that if there be any substantial evidence in the record in support of the finding of the appellate division, the judgment shall stand, so far as its findings of facts go. *United States* v. *International Forwarding Co.*, 13 Ct. Cust. Appls. 579, T. D. 41436.

We shall examine the record, therefore, to ascertain whether the findings of the Third Division are supported by any substantial evidence appearing in the record.

In substance, the court held that there was a foreign value for the imported goods, and also an export value; that the usual wholesale quantity was from 100 to 150 hides; that the principal market in Mexico for the imported hides is Monterrey; that there is an export value for the goods, but that the importers' testimony does not disclose what such export value was at the time of exportation; and that the importers have produced no satisfactory evidence to disclose what the foreign values of the goods were. The court, therefore, came to the conclusion that the importers had failed to establish "elements essential to a legal appraisement" and reversed the judgment of the single judge, and sustained the appraisement made by the local appraiser.

As to the foreign value, it appears from the affidavit of Juan M. Garcia et al., Exhibit 5, that there is a foreign-market value in Mexico for such hides as those imported here. This also appears from the statement of Scharff and Williams, customs agents, Exhibit 9. The same information is found in other parts of the record. It also appears from the same statement of the said customs agents that Monterrey is the principal market in Mexico for that character of merchandise in that locality. That 100 to 150 hides is the usual wholesale quantity, appears from the testimony of Customs Agent A. F. Scharff.

The appellate division was unable to ascertain from the record what the foreign or export value of the imported goods was. The court first discarded the proposed theory that these values might be ascertained by first finding what the value of these hides was in the principal market of the United States, and then by deduction of non-dutiable items arrive at the value thereof in Mexico, at the city

of Monterrey. The court was of opinion that this was an improper method of procedure, and did not constitute proof of foreign value. Furthermore, the court was of opinion that there was no evidence in the record in the examination of the witnesses Montemayor and Vizcaya which satisfactorily established such values. It appears that Montemayor has lived in Laredo, Tex., for about twenty years, and was engaged in business as a forwarding agent. During that time, he had handled many hides, but when it came to the question of his knowledge of prices in Mexico, it appeared that he based his knowledge thereof upon bulletins issued by the Department of Commerce of the Republic of Mexico, on hides, and from personal interviews he had had with hide dealers in Monterrey and elsewhere. The court below did not consider that this was a sufficient basis for testimony as to the foreign or export value of such hides in Monterrey. As to the testimony of Vizcaya, it appears that he was also a resident of Laredo, Tex., and had lived there for twelve years, and was employed as a customs broker. He did not profess to have anything more than a general knowledge of market values in Mexico, and expressed the view that Mexican home values were fixed by reference to quotations of values from United States sources. In support of his suggestions as to value, he produced a bulletin prepared in the United States, and which he explained was used in the fixing of prices for Mexican hides. The witness R. J. Scarborough, while he explained the general method of doing business in Mexican hides, gave no definite information as to the prices which were paid in the foreign market in the Monterrey district.

It also appears, from the testimony produced by the importers, and from the customs reports in evidence, that there was a great difference in quality of these imported hides; that it was the custom of American buyers to send a man to Monterrey, or other place where the hides were collected, and to pick out certain selected hides which were segregated and bought on contract; it appeared that there was a great lack of confidence existing between buyer and seller, and that usually the hides were contracted for in Mexico, the seller delivering the hides to the buyer in Texas and then collecting the Mexican export duty, the American import duty, freight, and other expenses, from the purchaser. It also appears from all of the record that the ordinary quality of Mexican hides was much lower than that of those produced on the United States side of the line, and that lower prices were obtained therefor; that many of the Mexican hides were taken from dead animals, and were full of grub holes; that the particular hides which were purchased and imported here were the "cream of the crop," and were worth much more than the ordinary run of Mexican hides.

After studying the record, we are of the opinion that the appellate division was not in error in holding that there was no evidence in the record sufficient to overthrow the finding of the local appraiser.

Complaint is made that the appellate division erred in holding that the trial judge should not have admitted Exhibits 1, 2, and 3 in evidence. The trial judge admitted these documents. In applying for a review by the appellate division, the alleged error of the single judge was attempted to be raised by the Government's assignment of error 12. The division held that these exhibits were inadmissible, because they were written in the Spanish language, with no translations into English, although it had previously expressed the view that the twelfth assignment of error was not sufficient.

Usually, the use of untranslated documents as evidence is regulated by the rules of the court in which the hearing is had. Such is the case in this court (see rule X), and, had these exhibits been incorporated, untranslated, into the record in this court, they would not have been considered. We are disposed, however, to agree with the view taken by the appellate division as to their inadmissibility. There is respectable authority in support of such position. *Meyer* v. *Witter*, 25 Mo. 83; *Sartor* v. *Bolinger*, 59 Texas 411. In addition, an inspection of the documents discloses that they are mere unauthenticated documents, without any of the *indicia* of correctness which customarily accompany similar foreign documents when they are used as evidence in our courts.

Other points are suggested by counsel, which we find it unnecessary here to pass upon, in view of our conclusions as above stated.

The judgment of the United States Customs Court, Third Division, is *affirmed*.