## BILL & CALDWELL, INC. *v.* UNITED STATES

No. 5996.—Invoice dated Alessandria, Italy, September 9. 1939.
Certified September 12, 1939.
Entered at New York, N. Y., September 26, 1939.
Entry No. 733444.

Second Division, Appellate Term

(Decided April 12, 1944)

Barnes, Richardson & Colburn (Joseph Schwartz of counsel) for the appellant.
Paul P. Rao, Assistant Attorney General (Samuel D. Spector, special attorney), for the appellee.

Before TILSON, KINCHELOE, and LAWRENCE, Judges

LAWRENCE, Judge: Men's fur felt hats, known as Borsalino hats, imported from Italy, were appraised on the basis of cost of production (sec. 402 (f) of the Tariff Act of 1930). On appeal for reappraisement by the importer, the court below, Judge Walker sitting as single judge, found the cost of production, as represented by the appraised values, to be the proper basis for determining the value of these hats, and that sales or offers for sale in Italy of such or similar hats were made to wholesalers and retailers only in usual wholesale quantities and in the ordinary course of trade; that all such sales or offers for sale were restricted or controlled; and that these facts rendered inapplicable to the merchandise the statutory foreign value, as defined in section 402 (c) of said act. Further, the court held that plaintiff "failed to establish any value or any basis of value differing from those found by the appraiser."

This is an application for a review of that decision.

It is the contention of appellant here, as it was below, that the proper basis of appraisement should be the foreign value (sec. 402 (c), supra). In its argument before this court counsel for appellant stated that "There are two questions involved in this case, as I see it; one of fact and one of law."

It is not disputed that Alessandria, Italy, was the principal market for these hats; that the usual wholesale quantity in the ordinary course of trade was 1 to 20 dozen hats, whether sold to wholesalers or to retailers; that sales to retailers were controlled or restricted; and that there is no export value. The appraiser's finding of cost of production introduces the presumption that there was no United States value for the merchandise.

The question of fact to which counsel referred is whether the sales or offers for sale of such or similar hats in Italy to wholesalers were restricted or controlled. In considering that question counsel urges that this court "will have to decide whether to accept the customs agent's report (exhibit 2) or the affidavit of V. Bonicelli (collective exhibit 1), in determining the question of fact which exists in this case."

The question of law posed by appellant is, in substance, that if, in Italy, sales to wholesalers are unrestricted and sales to retailers are restricted, would the sales to wholesalers establish foreign value?

Counsel for appellant contends in his argument on review that the record—

\* \* \* \* \* \* \*

establishes that at the time in question this exporter, or shipper, sold in Italy to two classes of purchasers, wholesalers and retailers, and that these hats were not freely sold to the retailers, they were sold only to a limited number of retailers who were exclusive dealers and that the manufacturer fixed the resale prices to the retailers.

and concedes—

* * * that there can probably be no dispute about the fact that so far as the retailers are concerned the set of facts shows that the sales to the retailers were certainly controlled, or restricted, under the decisions of this court and the Court of Customs and Patent Appeals and that, therefore, the sales to the retailers being controlled or restricted certainly would not establish foreign value; * * *.

In view of the conclusion we have reached in this case we deem it unnecessary to determine the question of fact as to the relative merits of the report of the Treasury representative and the affidavit of Valentino Bonicelli. Nor do we find it important to decide whether or not sales or offers for sale of these hats to wholesalers in Italy were controlled.

It is appellant's contention that sales of these hats to wholesalers in Italy, as shown by the record, are sufficient to meet the requirements of section 402 (c), *supra*, and to render applicable the statutory formula for foreign value. Of course, this contention proceeds upon the assumption that the sales to wholesalers were free and unrestricted, as to which we express no opinion, and that in determining foreign value the court should be concerned only with the sales which are freely made without restriction. As stated by counsel for appellant at the hearing on review:

* * *. In other words, if you have a group of sales which are freely made without any restriction, and if you have another group of sales which are made under restrictions, or under controls, then the sales which are made under control may not be considered. It is just as though we say they did not exist and therefore you have left only the sales which are freely made.

While this is an ingenious argument we are of the opinion that it cannot be sustained without giving the statute a strained interpretation. An examination of section 402 (c), *supra*, discloses a clear congressional intention to predicate foreign value of imported merchandise in part upon the market value or price at which such or similar merchandise "is freely offered for sale to *all* purchasers." [Italics supplied.] There is no suggestion in the words, above-quoted, that Congress was concerned with those who "purchase freely," as urged by appellant, but rather with a "freely offered" price by the manufacturer or seller to *all* who might wish to purchase in usual wholesale quantities in the ordinary course of trade.

The law is silent as to purchasers who "purchase freely," but is specific in its reference to a "freely offered" price at which *all* purchasers may obtain merchandise in usual wholesale quantities in the ordinary course of trade without restriction.

In *United States* v. *American Glanzstoff Corp.*, 24 C. C. P. A. (Customs) 35, T. D. 48308, it was disclosed that members of an association which manufactured artificial silk yarn made all sales of the yarn subject to a discount of 5 per centum, which discount was canceled if the purchaser bought from "outsiders." Discussing the words "all purchasers" as they appear in section 402 (c), *supra*, the court reasoned as follows:

\* \* \*. The expression "all purchasers" does not mean the members of some association only, or 99 per centum of the purchasers of such goods, or those who would not thereafter buy such goods from someone else, but it does mean all of those who cared to buy such goods in such markets. \* \* \*. The language of the statute is "freely *offered* for sale." [Italics ours.] If the offer has coupled with it the restriction that 5 per centum of the purchase price may be cancelled at the discretion of the seller, then the goods are not *freely offered* for sale at the price, less the loyalty discount, to *all* purchasers. [Italics quoted.]

In *United States* v. *Mexican Products Co.*, 28 C. C. P. A. (Customs) 80, C. A. D. 129, the court emphasized the fact that—

In determining foreign and export values, as defined in section 402 (c) and (d), respectively, it is proper to consider only the market values or prices at which merchandise like or similar to that imported is freely offered for sale *to all purchasers* (not to the greater number, or to those of a particular class) in the principal markets of the country from which exported in the usual wholesale quantities and in the ordinary course of trade. See *United States* v. *A. W. Faber, Inc.*, 21 C. C. P. A. (Customs) 290, T. D. 46819; *Stone & Downer Co.* v. *United States*, 21 C. C. P. A. (Customs) 479, T. D. 46958; *United States* v. *American Glanzstoff Corp.*, 24 C. C. P. A. (Customs) 35, T. D. 48308. [Italics quoted.]

While the cases above discussed do not present facts analogous to those now before us, nevertheless, it is clear that the underlying principle running through them is that in determining whether merchandise is freely offered for sale to all purchasers in usual wholesale quantities it is important that the price shall not be that offered to one class or group of purchasers in usual wholesale quantities, but the price offered to *all* purchasers in such quantities. Moreover, such sales must be free from restrictions as to the use, resale, or disposition of the merchandise imposed by the seller thereof upon the purchaser. Here, appellant concedes there was a restriction upon the use or disposition of the merchandise sold to retailers; and we agree with the statement of counsel for appellant, as above set forth, that—

\* \* \* the sales to the retailers were certainly controlled, or restricted, under the decisions of this court and the Court of Customs and Patent Appeals and that, therefore, the sales to the retailers being controlled or restricted certainly would not establish foreign value; \* \* \*.

A recent expression of the appellate court upon the subject of a restricted market is *United States* v. *Heemsoth-Kerner Corp.* (*Bauer Type Foundry, Inc.*), 31 C. C. P. A. (Customs) 75, C. A. D. 252. There, certain printing type from Germany was appraised on the

basis of United States value, but reappraised on the basis of cost of production. In explaining the nonexistence of a United States value for the merchandise, the court pointed out that—

* * * while it appears that the merchandise is freely offered by appellee for sale in the principal market at list prices to all purchasers in some portions of the United States, it is not freely offered for sale by appellee at such list prices in such principal market to purchasers in territories allotted to distributors, which territories cover a major portion of the United States.

On those facts the court concluded that—

* * * it may not be held that it is freely offered for sale in the principal market to all purchasers in the ordinary course of the trade within the meaning of section 402 (e), *supra*.

The court then expressed its view as follows:

We are of opinion that as to the question of United States value the case falls within the principle of the decisions in *Half Moon Manufacturing & Trading Co., Inc.* v. *United States*, Reap. Dec. 4314, 73 Treas. Dec. 1560; *Goodyear Tire & Rubber Co.* v. *United States*, 11 Ct. Cust. Appls. 351, T. D. 39158, and *United States* v. *International Forwarding Co.*, 13 Ct. Cust. Appls. 579, T. D. 41436.

We find nothing in *American Shipping Co. (General Electric X-Ray Corp.)* v. *United States*, 29 C. C. P. A. (Customs) 250, C. A. D. 198, relied upon by appellant, to support its contention "that in determining foreign value only the sales which are freely made without restriction may be considered." In that case the court merely held that, under the circumstances there disclosed, sales to consumers if made in usual wholesale quantities in the ordinary course of trade, may be considered as well as sales to wholesalers in determining foreign value. It logically follows, we think, that if sales to consumers may be considered in the circumstances just related, sales to retailers in the present case must likewise be considered; and that if controls or restrictions apply to any one class of purchasers who buy in usual wholesale quantities in the ordinary course of trade, that fact deprives statutory foreign value of its appropriate application.

. If, as insisted by appellant, sales to retailers "which are made under control may not be considered," and that "It is just as though we say they did not exist and therefore you have left only the sales which are freely made," would not the converse be equally true that where wholesalers were restricted and retailers were not restricted, the sales to wholesalers should be ignored and foreign value be predicated upon the sales to retailers only? Such a construction we believe would be contrary to the intent of the lawmakers as expressed in said section 402.

The undisputed evidence establishes these facts—

1. That the merchandise in controversy consists of men's fur felt hats known as Borsalino hats which were exported from Italy on September 15, 1939.

2. That at the time of exportation the principal market for these hats was at Alessandria, Italy, and the usual wholesale quantity in the ordinary course of trade at which they were sold or offered for sale there to all purchasers was from 1 to 20 dozen hats.

3. That there were at the time of exportation two classes of purchasers in Italy who bought in such quantity in the ordinary course of trade, namely, wholesalers and retailers.

4. That the manufacturer fixed the prices at which these hats might be resold by the retailers.

5. That at the time of exportation there was neither an export nor a United States value for such or similar hats.

On these facts we hold as a matter of law:

That at the time of exportation there existed for these hats no foreign, export, or United States value, as defined in said section 402 (c), (d), and (e), respectively, and that the proper basis for determining the value of said hats is the cost of production (sec. 402 (f), *supra*), and that such value, as to each item involved herein, is the value found by the trial judge, whose judgment is hereby affirmed.

Judgment will be entered accordingly.