MONTGOMERY WARD & CO. v. UNITED STATES

No. 7637.—Invoices dated Taxco, Gro., Mexico, November 15, 1943, etc.
Certified November 15, 1943, etc.
Entered at Chicago, Ill., November 29, 1943, etc., and Denver, Colo., February 4, 1946.
Entry Nos. 1780; 386; 227.

(Decided December 14, 1948)·

*Wallace & Schwartz* (*Barnes, Richardson & Colburn* by *Joseph Schwartz* of counsel) for the plaintiff.

*David N. Edelstein*, Assistant Attorney General (*Howard L. Harawitz* and *Samuel D. Spector*, special attorneys), for the defendant.

CLINE, Judge: These are appeals for reappraisement of silverware and jewelry exported from Mexico on July 21, 1943, November 17, 1943, and January 17, 1946. The merchandise consisted of various items of silver jewelry and silver water pitchers, spoons, butter

spreaders, ash trays, and bowls manufactured by Spratling y Artesanos, S. A., Taxco, Mexico. It was appraised on the basis of foreign value at the list prices. The importer claims that the correct dutiable values are the list prices less 25 per centum.

At the trial plaintiff called Paul K. Bonebrake, manager of the Jewelry and Silverware Department of Montgomery Ward & Co., who testified that he had personally bought the silverware involved herein; that he had made a trip to Mexico in 1943 to survey the silverware situation and had decided that Spratling was producing the type of merchandise his firm wanted; that he had negotiated with Mr. Spratling, who told him that his firm could purchase at 25 per centum less than the list prices; that consumers who bought from Spratling paid the list prices and dealers who bought for resale paid the same prices less a 25 per centum discount; that no minimum quantity was required in order to obtain the discount.

T. V. Parke, manager of the Import Department of Montgomery Ward & Co., testified that the merchandise was paid for exactly as invoiced, which was at list prices less 25 per centum.

Luis Rendon, called as a witness for the plaintiff, testified that he had been secretary to Mr. Spratling from 1941 to 1943 and had been assistant manager from 1943 until "this year" [1947]; that Spratling maintained a factory and an office just outside of Taxco and, from July 1, 1943, to December 1, 1945, a retail store in Taxco; that merchandise was sold at the store to tourists at list prices; that tourists usually bought 1 to 4 pieces and occasionally 8 to 10 pieces; that purchases made by tourists were wrapped in a chamois or felt bag with the Spratling insigne on it; that Spratling sold to other classes of customers at the factory; that these buyers paid list prices less 25 per centum; that the discount was given because they bought in greater quantities; that the wholesale business amounted to 70 per centum and the retail 30 per centum; that there was no minimum which those who bought for resale had to buy; that they usually bought from 100 to 1,000 pieces, but sometimes less; that on December 1, 1945, a new corporation, Las Delicias, S. A., was organized to run the retail business but there was no change in selling policies; that after December 1, 1945, the firm of Spratling did not make any sales at retail; that it sold to Las Delicias at the list prices less 25 per centum; that the list prices less 25 per centum were offered by Spratling to all wholesale purchasers in Mexico or in the United States; that sales to wholesale customers were wrapped in tissue paper and packed in boxes.

On cross-examination Mr. Rendon stated that the interests in Las Delicias and in Spratling y Artesanos were practically the same; that in order for a buyer to get the discount he had to show that he bought for resale; that consumers never received the discount; that if a tourist bought a thousand pieces he would pay the list price without a

discount; that if an established dealer bought one piece he would get the discount; that the average purchase by dealers was a thousand pieces except that Mexican dealers bought smaller quantities; that no tourist ever bought a thousand pieces.

Defendant offered in evidence four reports of Treasury Representative S. J. Kennedy, dated, respectively, October 20, 1943, November 10, 1943, June 6, 1944, and June 21, 1945 (defendant's exhibits 2, 3, 4, 5). These reports state that the Spratling list prices were retail prices; that a discount of 25 per centum from list prices was freely offered to all purchasers who bought for resale in the United States; that such purchasers were not required to buy any specified minimum quantity in order to receive the discount; that it was only necessary that they establish their status as dealers; that initial orders from new customers were expected to cover a reasonably adequate sample line, but that no orders had been refused except two which were inordinately large and could not have been filled; that it was expected that any one dealer would in a reasonable period of time buy more than any one consumer; that orders from dealers for one each of several items were not unusual; that consumers were not granted the discount, except now and then as a favor, regardless of the quantities they bought; that the usual sale to a consumer consisted of one or two pieces, but some of the larger sales to consumers covered as many items as some of the smaller sales to dealers; that the 25 per centum discount had also been granted to a few institutions and business houses which placed large orders before Christmas for pieces of jewelry to be distributed to clients or employees.

The parties are in agreement that the merchandise herein is of a distinctive type and that the principal market is Taxco, Mexico. The only issue is whether it should be appraised on the basis of the list prices or the list prices less a discount of 25 per centum. It is apparent from the record herein that in the ordinary course of trade Spratling silverware was sold to consumers, mainly tourists, and to dealers; that it was sold at list prices less 25 per centum to those who showed they were established dealers and at list prices without any discount to all others; that occasionally, as a favor, the 25 per centum discount was granted to others than dealers; that ordinarily the quantity purchased in any particular sale was not the criterion, but the status of the purchaser; that the discount was granted to dealers on every sale no matter what the quantity because it was expected that in the long run they would buy in far larger quantities than others.

Section 402 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, provides, however, that the foreign value is the price at which the merchandise is freely offered to *all* purchasers in the usual wholesale quantities. The only evidence herein as to wholesale quantities is Mr. Rendon's statement that

dealers usually bought 100 to 1,000 pieces. That is not sufficient to establish what were the usual wholesale quantities in which this merchandise was bought and sold. It is clear from the record, however, that the discount was not allowed to all purchasers of wholesale quantities but to one class of purchasers only.

In *United States* v. *Richard & Co.*, 15 Ct. Cust. Appls. 143, T. D. 42216, the court said (p. 147):

It is argued because sales to wholesalers are all made at the same price that therefore this price thus becomes the wholesale price. But it will be observed that the statute does not thus establish the wholesale price. Section 402 (b) does not provide that the wholesale price shall be the price to *wholesalers*, but the price in the usual *wholesale quantities*. The law is not concerned with the persons who buy, but the manner in which they buy. [Italics quoted.]

The facts in that case are analogous to those here involved. There, buyers who sold at wholesale only, received a 10 per centum discount, even though the amount purchased was small, while other buyers did not receive the discount, even though they bought large quantities. The court held that it could not be said that the merchandise was being freely offered for sale when it was offered to certain purchasers only, and those purchasers, ones who had "satisfied" the seller that they were wholesalers. In the instant case the discount was offered only to purchasers who had "satisfied" the seller that they were dealers.

In *Bill & Caldwell, Inc.* v. *United States*, 12 Cust. Ct. 437, Reap. Dec. 5996, fur felt hats were sold in Italy to two classes of purchasers, namely, wholesalers and retailers. The manufacturer fixed the prices at which they might be resold by retailers but no restriction was placed upon sales by wholesalers. The court held that the sales to retailers could not be disregarded and a foreign value found upon the basis of the sales to wholesalers only, setting forth the principle that "in determining whether merchandise is freely offered for sale to all purchasers in usual wholesale quantities it is important that the price shall not be that offered to one class or group of purchasers in usual wholesale quantities, but the price offered to *all* purchasers in such quantities." [Italics quoted.]

In the instant cases, sales to one class—consumers—cannot be disregarded and value found upon the basis of sales to another class—dealers—since the record does not establish that sales to the latter were always in the usual wholesale quantities and sales to the former were not.

Moreover, sales cannot be disregarded, merely because they were made to *consumers*. *American Shipping Co.* v. *United States*, 29 C. C. P. A. 250, C. A. D. 198. The merchandise in that case consisted of X-ray grids which were sold to dealers at one price and to consumers at a higher price. One grid was the usual wholesale

quantity. The court held that the only freely offered prices to all purchasers were the prices at which the merchandise was appraised, that is, the prices to consumers; that sales to consumers, if made in wholesale quantities, may be considered in determining foreign value; and that while Congress did not want to base foreign value upon sales not made in wholesale quantities, "it did intend that the price to be accepted as a basis of foreign value should be that which was freely offered to all and not that which was offered to a privileged few regardless of the status of the few."

Even though a major portion of the sales in wholesale quantities was at the list price less 25 per centum, that price cannot be used as the basis for finding dutiable value. *United States* v. *Mexican Products Co.*, 28 C. C. P. A. 80, C. A. D. 129. In that case a greater part of the sales was at list prices less certain discounts, but the merchandise was not freely offered to *all* purchasers in wholesale quantities and in the ordinary course of trade at prices less than the list prices. The court held that the proper dutiable values were the list prices, stating (p. 89):

In determining foreign and export values, as defined in section 402 (c) and (d), respectively, it is proper to consider only the market values or prices at which merchandise like or similar to that imported is freely offered for sale *to all purchasers* (not to the greater number, or to those of a particular class) in the principal markets of the country from which exported in the usual wholesale quantities and in the ordinary course of trade. See *United States* v. *A. W. Faber, Inc.*, 21 C. C. P. A. (Customs) 290, T. D. 46819; *Stone & Downer Co.* v. *United States*, 21 C. C. P. A. (Customs) 479, T. D. 46958; *United States* v. *American Glanzstoff Corp.*, 24 C. C. P. A. (Customs) 35, T. D. 48308. [Italics quoted.]

The record in the instant case does not indicate clearly what the usual wholesale quantities were nor does it appear that sales to consumers never were in the usual wholesale quantities, but it does establish that all sales to consumers, whether or not in the usual wholesale quantities, were at list prices. Under these circumstances, the sales to consumers cannot be disregarded. It must be held, therefore, that the only prices at which the merchandise was freely offered to *all* purchasers in the usual wholesale quantities and in the ordinary course of trade were the list prices.

Upon a full consideration of the entire record I find:

1. That the merchandise herein consists of silver jewelry, water pitchers, spoons, butter spreaders, ash trays, and bowls exported from Mexico on July 21, 1943, November 17, 1943, and January 17, 1946.

2. That at the time of exportation the principal market for this silverware was at Taxco, Mexico.

3. That this merchandise was sold to two classes of purchasers, dealers and consumers.

4. That the merchandise was sold to consumers at list prices and to dealers at list prices less 25 per centum.

5. That the prices charged did not depend upon the quantity purchased but on the status of the purchaser.

6. That the prices at which the merchandise was freely offered for sale to all purchasers in the principal market, Taxco, Mexico, in the usual wholesale quantities and in the ordinary course of trade, at the time of exportation, were the list prices.

On these facts I hold as a matter of law:

That the proper basis for determining the value of this merchandise is the foreign value as that value is defined in section 402 (c) of the Tariff Act of 1930, as amended, and that such values are the appraised values.

Judgment will be rendered accordingly.