J. L. HAMMETT COMPANY v. UNITED STATES

No. 7702.—Invoice dated Bathampton, England, January 1945.
    Certified January 1945.
    Entered at New York, N. Y., February 6, 1945.
    Entry No. 720396.

(Order dated May 12, 1949)

*Eugene R. Pickrell* for the plaintiff.
*David N. Edelstein*, Assistant Attorney General (*Frank E. Carstarphen* and *Daniel I. Auster*, special attorneys), for the defendant.

ORDER

EKWALL, Judge:    This is an appeal by the importer from the finding of value by the appraiser on an importation consisting of 9,700 pounds of plasticine from England.    The merchandise was packed in 1-pound cartons.    The date of exportation was January 12, 1945.    It was invoiced and entered at 7½ pence (sterling) per pound, plus packing, as invoiced, which plaintiff contends is the export value as defined in section 402 (d) of the Tariff Act of 1930.    The United States appraiser found a value of 2 shillings per pound, less a discount of 33⅓ percent, less a cash discount of 2½ percent, plus packing, as invoiced, which represented the foreign value of the merchandise.

The plaintiff contends that there was no statutory foreign value (section 402 (c) of the Tariff Act of 1930, as amended), because it is alleged sales and offers for sale for home consumption in Great Britain are restricted.    Plaintiff further claims that the entered value represents the statutory export value.

On the part of the Government it is contended that offers and sales in the home market were not restricted in the sense that the market was controlled, that there is a statutory foreign value for the merchandise which is represented by the appraised value, that no statutory export value has been shown for the reason that the importer was exclusive purchaser in the United States during the period of exportation, and that the merchandise was not offered to others in the United States.    Further, it is alleged that the statutory foreign value is higher than the export value, if any, and therefore must govern under the provisions of section 402 (a) (1) of said tariff act.

The evidence consists of the oral testimony of the treasurer and general manager of J. L. Hammett Company, the plaintiff herein, and of the United States examiner at the port of entry who passes upon this type of merchandise, together with nine exhibits, consisting

of letters, two affidavits of the director of the manufacturer and shipper of the instant merchandise, a report of the Supervising United States Treasury Attaché of London, England, together with copies of questionnaires.

The appraiser has found a foreign value for the merchandise, which finding the plaintiff is contesting on the ground that the sales and offers to sell plasticine for home consumption in Great Britain are restricted. From the oral testimony and documentary evidence the following appears. Plasticine such as or similar to the merchandise at bar was not sold or offered for sale in Great Britain by other concerns than the manufacturer and shipper for either home consumption in Great Britain or for export to the United States. There is a uniform list price to all purchasers for home consumption with varying discounts depending upon the class of purchaser. Offers were made to all possible purchasers for home consumption except bakers, butchers, shoemakers, and chemists. No reason is given for the failure to offer the merchandise to these particular persons, nor is there any evidence that such persons sought to purchase plasticine. While the evidence shows that the uses of this commodity are many and varied, I find nothing to indicate a use to which bakers, butchers, shoemakers, and chemists could put this plasticine. In the absence of such a showing, it may very well be that this group finds no use for the material. Moreover, there is conflict on this point between the statements made by the managing director of the manufacturer and shipper in the affidavit (collective exhibit 6) and his answer to question 49 in a questionnaire (collective exhibit 9), submitted to him. In the latter, in answer to a question as to whether there are any classes of trade or any possible purchasers of plasticine in England to whom the manufacturer does not offer this merchandise or to whom he will not sell it, the answer was in the negative.

The record further shows that the producer of this plasticine sells the product for home consumption to retailers, wholesalers, educational committees, industrial concerns, and munitions makers at a *per se* price of 2 shillings a pound, less varying discounts, according to the class of purchaser. As to the sales to retailers, it is understood that the retailer is bound by the price published by the manufacturer. While it is not stated as a condition of sale that retailers must resell at the manufacturer's list prices, there is evidence that if it were learned that the retailer was selling at other than the list prices the manufacturer would at once advise the retailer that no further orders could be accepted from him unless he promised to adhere to the list prices in the future.

It is contended on behalf of the Government that the record fails to show the sales to be restricted for the reason that nowhere in the

record is there any written or printed matter with respect to the alleged understanding that the products of this manufacturer must be sold to the public at listed prices.

I am unable to find merit in this contention. As I view the record, it discloses an understanding which amounts to an agreement that resales must be at the list prices, or higher. This is indicated by the evidence that if the manufacturer learns of a deviation by the retailer from said list prices, further orders would not be accepted without a promise that he would adhere to such list prices in the future. No free market for this merchandise for home consumption can exist under these circumstances. In determining whether merchandise is freely offered for sale, the principle has been established that the price is not that offered to one class or group of purchasers in usual wholesale quantities but the price offered to all purchasers in such quantities. See *United States* v. *American Glanzstoff Corp.*, 24 C. C. P. A. (Customs) 35, T. D. 48308; *United States* v. *Mexican Products Co.*, 28 C. C. P. A. (Customs) 80, C. A. D. 129; *United States* v. *A. W. Faber, Inc.*, 21 C. C. P. A. (Customs) 290, T. D. 46817; and *Stone & Downer Co.* v. *United States*, id. 479, T. D. 46958. Those cases further establish that the sales must be free of restrictions as to the use, resale, or disposition of the merchandise imposed by the seller upon the purchaser. As I have found that there is no free market for home consumption, it must follow that there is no foreign value as defined in section 402 (c). In arriving at this conclusion, the case of *Bill & Caldwell, Inc.* v. *United States*, 12 Cust. Ct. 437, Reap. Dec. 5996, is directly in point. There, sales of certain fur felt hats to wholesalers were alleged to be unrestricted and sales to retailers were restricted. The court held that as there was a restriction upon the use or disposition of the merchandise sold to retailers, foreign value had not been established, for the reason, as stated:

\* \* \* if controls or restrictions apply to any one class of purchasers who buy in usual wholesale quantities in the ordinary course of trade, that fact deprives statutory foreign value of its appropriate application.

See also *United States* v. *Heemsoth-Kerner Corp. (Bauer Type Foundry, Inc.)*, 31 C. C. P. A. (Customs) 75, C. A. D. 252; and *United States* v. *Half Moon Mfg. & Trading Co., Inc.*, 28 C. C. P. A. (Customs) 1, C. A. D. 115.

As to the existence of an export value, the two affidavits of Mr. Hawling, director of the manufacturer and shipper (collective exhibits 6 and 7), contain statements that this plasticine was freely offered to all purchasers for export to the United States, packed in 1-pound cartons, without restrictions as to disposition. It further appears that the usual wholesale quantity sold for export to the United States is 5,000 to 5,100 pounds and the principal market is at Bathampton.

This affiant also states that there is no exclusive purchasing or selling agreement between Harbutt's Plasticine, Ltd., the manufacturer, and the importer herein, the relationship being that of buyer and seller; that no other concerns were exporting plasticine to the United States during the period from January 1944 to October 1945.

However, it is noted that in a letter from the manufacturer to the plaintiff herein (exhibit 2) under date of June 20, 1944, in discussing prices for home trade and for export, the manufacturer concludes with this sentence: "As our sole representatives for the whole of the U. S. A. you will be well acquainted with these extra items." And in a letter under date of May 22, 1944, to the customs brokers in this case (exhibit 1), the treasurer and general manager of the plaintiff company, who had held such offices for 51 years, stated: "We have the exclusive right for the distribution for the United States for Harbutt's Plasticine." This latter statement was explained by the witness, when testifying on the stand, by the statement that it was due to a mistaken belief at the time; that he had since found out that the plaintiff did not have such exclusive right to distribute Harbutt's plasticine in the United States. However, he stated that he did not know anyone else who was buying this merchandise at the time; that on or about June 20, 1944, this plasticine was not being sold to anyone else in the United States. He further testified that subsequent to the date of this letter, he made a thorough investigation and found that the plaintiff had no contract with the manufacturer; that Harbutt's Plasticine, Ltd., advised him that they sold plasticine to several concerns for export to the United States.

The report of the Supervising Treasury Attaché in evidence (collective exhibit 8) states that there is no specific agreement between the manufacturer and shipper of the instant merchandise, but the manufacturer will not offer or sell plasticine in packets to anyone else for exportation to the United States as long as the plaintiff herein purchases satisfactory quantities.

Although Mr. Hawling, in the affidavit (collective exhibit 6) states that the manufacturer has sold identical plasticine for export to the United States and gives a list of concerns in this country as buyers, there is no evidence of the dates of the sales, the prices at which they were made, or the quantities involved. Moreover, Mr. Hawling testified that these sales were not made at or near the time of exportation of the instant merchandise. He knew of one sale made in 1908, which was 35 years prior to the instant importation. It is clear that this evidence has no probative value.

Said collective exhibit 6 also gives a list of sales ranging in date from March 1944 to August 1946, all of which were made to the importer herein and are corroborative of the understanding between

the seller and the importer, even though no written contract was proven. It is noted that this list shows frequent sales each year involving a total of 86,800 pounds. It seems to me that these purchases were in "satisfactory quantities" and that, therefore, the manufacturer did not offer or sell to anyone else for exportation to the United States during that time.

I find that the evidence does not support the claim that an export value for this merchandise existed at the time of the exportation of this merchandise in that it has not been shown that such or similar plasticine is freely offered to all purchasers in the principal markets of England, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States.

Plaintiff has requested in the brief filed that in the event the court decides that there is neither foreign nor export value for this merchandise, the case be restored to the calendar so as to afford the plaintiff an opportunity to adduce evidence as to United States value. I think the ends of justice would best be served by granting this request. The case is therefore restored to the calendar in order that evidence may be produced as to the United States value of this merchandise.