HENSEL, BRUCKMANN & LORBACHER, INC. *v.* UNITED STATES

No. 7825.—

Entry No. 754799.

(Decided May 1, 1950)

Eugene R. Pickrell (Eugene R. Pickrell and Michael Stramiello, Jr., of counsel) for the plaintiff.
David N. Edelstein, Assistant Attorney General (Samuel D. Spector, special attorney), for the defendant.

LAWRENCE, Judge: An examination of the record and briefs discloses that the parties to this litigation have brought the issue raised by this appeal for reappraisement within narrow confines, namely, whether the item referred to on the consular invoice as a license fee should be included in the statutory cost of production of certain printing machines.

The Transkrit Corporation of New York, the actual importer, purchased from Transkrit, Ltd., also referred to as Transkrit A. G. of Zurich, Switzerland, four so-called Transkrit machines which were manufactured by the Maschinen-Fabrik, M. A. N., of Augsburg, Germany, upon orders from said Transkrit A. G.

The machines were invoiced at a unit price per machine of 22,000 RM. They were entered at a unit price of 12,000 RM and appraised at 22,000 RM each, plus packing, as representing the cost of production, section 402 (f) of the Tariff Act of 1930 (19 U. S. C. § 1402 (f)).

A notation on the invoice reads as follows:

License Fee to be paid by the Transkrit Corporation
  to Transkrit Ltd._____ RM 10,000
Cost of Transkrit Machine to be paid by the Transkrit Corporation
  to the Maschinen-Fabrik M. A. N. Augsburg, Germany_____ RM 12,000

As indicated above, the sole question for determination is whether or not the item of 10,000 RM was properly included in the value found by the appraiser.

Briefly stated, it is the contention of plaintiff that the license fee of 10,000 RM per machine is paid by the importer in return for restricted territorial rights granted by Transkrit, Ltd., of Zurich, Switzerland.

In support of its contention, plaintiff introduced affidavits marked exhibit 1, collective exhibit 2, and exhibits 3–A to 3–L, respectively, and also the oral testimony of Mr. Richard Neubauer, president of the importing corporation. Motion of defendant to exclude exhibit 3–L from the record is denied and an exception allowed.

Exhibit 1 is an affidavit of Ernst Hodler, managing director of Transkrit A. G., who deposes that he had charge of the sales of all Transkrit machines sold by his company; that the price of 22,000 RM per machine included a license fee of 10,000 RM for territorial rights in the United States and 12,000 RM represented the purchase price of each machine; that he is the inventor of the machines in question and that Transkrit A. G. owns the patents covering them; that Maschinen-Fabrik Augsburg-Nurnberg A. G. manufactured and shipped these machines on orders placed with it by Transkrit A. G.; that Transkrit A. G. sells Transkrit machines such as those in controversy for home consumption in Germany and for export to the United States and other foreign countries at 22,000 RM of which 12,000 RM are paid to the manufacturer as the purchase price and that 10,000 RM are paid to Transkrit A. G. as a license fee for territorial rights; that every purchaser of a Transkrit machine in Germany, the United States, and other foreign countries is given exclusive territorial rights for the fee of 10,000 RM paid to Transkrit A. G.

Plaintiff's collective exhibit 2 is an affidavit of Franz H. Hausenblas of Augsburg, Bavaria, Germany, who deposes that he was a mechanical engineer with Maschinen-Fabrik Augsburg-Nurnberg A. G.; that

he supervised the production and sales of the machines before the court; that the Maschinen-Fabrik concern is the only one in Germany which manufactures said machines, which are shipped directly by it to the purchasers; that he is fully acquainted with the costs of manufacture of the machines in controversy, which he set forth in his affidavit, amounting to 12,000 RM per machine.

Plaintiff's exhibit 3–A is another affidavit of Ernst Hodler, above referred to, which is descriptive of written agreements between Transkrit A. G. of Zurich, Switzerland, and Messrs. Sigmund and Richard Neubauer, Ludwigshafen a/Rhein, Germany, and between Transkrit A. G. and Transkrit Corporation of New York, and other papers relating to the purchase of Transkrit machines, showing the relationship created by the parties to the agreements and the provisions relating to license fees and royalty fees.

Mr. Richard Neubauer, president of the Transkrit Corporation, called as a witness for the plaintiff, testified that he is in the business of manufacturing spot-carbonizing paper for the printing trade; that he is familiar with the machines in this case having bought and installed them; that prior to 1938, he supervised the operation of such or similar machines for 9 years in Germany; that for a time he was a co-partner in the firm of Neubauer Brothers; and that the price of the four machines was 48,000 RM and the license fee was 40,000 RM; that Transkrit A. G. could not sell these machines to anyone in those parts of the United States where Transkrit Corporation had acquired exclusive territorial rights, and, on the other hand, the Transkrit Corporation could not buy Transkrit machines from anyone but Transkrit A. G.; that he negotiated the agreements marked plaintiff's exhibits 3–B, 3–C, 3–D, and 3–L, the first three of which were assigned to the Transkrit Corporation by Sigmund and Richard Neubauer; that the imported machines were installed in the importer's places of business in New York, Chicago, and Rochester; that the machines were covered by United States Letters Patent and that at the time of importation thereof these machines were never dealt in or imported by anyone else in the United States.

In support of its contention that said license fee should be included in the cost of production, the value returned by the appraiser, the United States relies upon *International Forwarding Co.* v. *United States,* 17 C. C. P. A. (Customs) 86, T. D. 43377; *General Dyestuff Corp.* v. *United States,* 19 C. C. P. A. (Customs) 309, T. D. 45480; and *Lionel Trading Co., Inc.* v. *United States,* 24 C. C. P. A. (Customs) 432, T. D. 48900.

An examination of those cases reveals vital points of distinction from the case before me.

In the *International Forwarding Co.* case, *supra,* the appellate court was reviewing a judgment of the trial court which had denied a petition for remission of additional duties assessed by the collector of

customs pursuant to section 489 of the Tariff Act of 1922 (19 U. S. C. § 1489). It appears from the opinion of the appellate court in that case that petitioner had purchased an oxygen-rectification column to be installed at its plant in New Jersey, at a complete cost to the purchaser, including crating and packing, freight in Germany, ocean freight, insurance, unloading charges, duty, royalty, in fact all charges up to and including installation, of $8,000. In making entry, the importer in that case deducted, among other items, a royalty in the amount of $1,800, which was paid by the purchaser to the seller and which it appears "was a part of the total purchase price of $8,000." As stated by the appellate court—

The sole question involved is as to remission of duties assessed after reappraisement on account of the royalty fee of $1,800 not being included in the original entry.

The factual difference between that case and the present one is quite apparent for there, as stated by the court, the so-called royalty "was a part of the total purchase price" while in the case at bar it appears that the license fee did not enter into the cost of production of the machines in controversy.

In passing, the appellate court in the *International Forwarding Co.* case, *supra*, said:

* * * The plain words of the statute as construed again and again by the courts should have enabled one with full knowledge of the purpose of the payment of the royalty fee to make the correct entry.

Accordingly the judgment of the lower court was affirmed.

In *General Dyestuff Corp.* v. *United States, supra*, it appears that a so-called royalty fee of 10 per centum of the base price of a commodity for the use of a patented process was included in the finding of United States value, no sales or offers for sale of the article being made without adding 10 per centum as a part of the selling price. It was accordingly held that the royalty fee there in dispute constituted an integral part of the United States value under section 402 (d), Tariff Act of 1922.

There again the selling price, as well as the offers for sale, of the commodity in question included the amount of the royalty fee, whereas in the record before me it appears that the license fee was not included in the cost of production of the imported article.

The case of *Lionel Trading Co., Inc.* v. *United States, supra*, presented to our appellate court the following state of facts: Certain paper boxes and glass bottles were made by subcontractors for the exclusive use of the exporting concern which had furnished the designs for making the boxes and also the moulds for making the bottles, all of which were produced for the exclusive use of the exporter.

In finding cost of production in that case, the appraiser included an item of 28 per centum which was charged by the exporter as "a profit

to cover the purchase of the imported merchandise and for permission on the part of the importer to have the sole use in the United States of the name 'Corday' and to cover the permission to use the special designs in packing, etc., of perfumes and toilet articles which had through advertisements secured a world wide reputation."

In the circumstances of that case, the court held, as above indicated, that the exporter (Corday) was the manufacturer or producer within the meaning of section 402 (f) of the Tariff Act of 1930, and that since the making, producing, and furnishing of the designs and moulds which the exporter owned were part of the cost of production, the item of 28 per centum added by the exporter, being an addition to the cost to the subcontractors, was properly added to the entered value to make cost of production. Whether or not any portion of the 28 per centum was improperly added, the court was unable to determine upon the state of the record.

It is not believed that the area of that case should be extended and applied to the present case. In the *Lionel* case, *supra*, it clearly appears that the exporter participated in a substantial way in the production of the commodity which it exported. It not only furnished and owned the designs for making the boxes but also supplied the moulds which were used in producing the bottles. Furthermore, it appears that the item of 28 per centum was added in that case in part, at least, as a "profit to cover the purchase of the imported merchandise," while in the case at bar the item of 10,000 RM referred to as a license fee accruing to the patentee was for the acquisition of territorial rights to do business in a particular area rather than a profit to the manufacturer.

Of the cases cited by plaintiff, *United States* v. *F. B. Vandegrift & Co. et al.*, 26 C. C. P. A. (Customs) 360, C. A. D. 42, has a vital bearing upon the issue presented in the instant case. It appears from the opinion of the court in the *Vandegrift* case, *supra*, that certain machines were entered at the claimed purchase price of $1,800 each and that the importers also paid to the manufacturers an additional amount of $1,200 as a so-called license fee. The contention of the United States that the item of $1,200 was properly a part of the cost of production of the machines was disapproved by the court, it appearing from the record that such fee was paid not for the right to use but in consideration of the exclusive right to purchase such machines in the United States as well as the exclusive right to manufacture and sell such machines both in the United States and Canada.

The foregoing considerations support the following findings of fact:

1. The importation consists of four Transkrit machines sold by Transkrit A. G., Zurich, Switzerland, to Transkrit Corporation of New York.

2. That said machines were manufactured by the Maschinen-Fabrik Augsburg-Nurnberg A. G. of Augsburg, Germany, who

shipped the machines to said Transkrit Corporation, and who was the sole manufacturer of such or similar machines.

3. That said machines were, at the time of exportation, covered by United States Letters Patent issued to one Ernst Hodler and assigned by him to said Transkrit A. G.

4. That said Transkrit Corporation paid to Maschinen-Fabrik Augsburg-Nurnberg A. G. the sum of 88,000 RM for the said four machines, of which amount 40,000 RM were transmitted to Transkrit A. G.

5. That the 40,000 RM paid by the importer (Transkrit Corporation) to Transkrit A. G. through Maschinen-Fabrik Augsburg-Nurnberg A. G. was in payment for the acquisition of territorial rights in the United States granted to the Neubauer brothers who are the sole stockholders in the Transkrit Corporation.

6. That the 48,000 RM retained by Maschinen-Fabrik Augsburg-Nurnberg A. G. was payment for producing and manufacturing the said four Transkrit machines.

7. That Transkrit machines such as or similar to those in controversy were never offered for sale or sold in the United States by any person, firm, or corporation.

8. That the cost of materials, fabrication, manipulation, or other process employed in the manufacture or production of these machines was 4,900 RM per Transkrit machine; the usual general expenses in the production of Transkrit machines were 5,700 RM; packing costs were as shown on the invoice; and the addition for profit was 1,400 RM per machine.

9. That the cost of production for each of the machines was 12,000 RM, plus packing, as entered.

Therefore, as matter of law, I conclude:

1. That there is no foreign, export, or United States value for the machines at bar as those terms are defined in section 402 of the Tariff Act of 1930 (19 U. S. C. § 1402).

2. That cost of production as that value is defined in section 402 (f) of the Tariff Act of 1930 (19 U. S. C. § 1402 (f)) is the proper basis for determining the value of the instant merchandise.

3. That said cost of production is that shown in finding of fact No. 9, *supra*.

Judgment will be entered accordingly.