The judgment of the United States Customs Court is accordingly *affirmed.*

UNITED STATES *v.* HENSEL, BRUCKMANN & LORBACHER, INC.
(No. 4677) [1]

---

[1] C. A. D. 468.

United States Court of Customs and Patent Appeals, November 7, 1951

*David N. Edelstein,* Assistant Attorney General (*Joseph F. Donohue,* special attorney, of counsel), for the United States.

*Eugene R. Pickrell* (*Michael Stramiello, jr.,* on the brief) for appellee.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Associate Judges

O'CONNEL, Judge, delivered the opinion of the court:

This is an appeal taken by the Government from the judgment of the United States Customs Court, Third Division, entered pursuant to its decision, Reap. Dec. 7949, affirming the judgment of a trial court rendered in accordance with the decision of Judge Lawrence, sitting in reappraisement, 24 Cust. Ct. 603, Reap. Dec. 7825. The case involved the reappraisement of four transkrit machines or printing presses imported at the port of New York from Germany in June of 1942.

Appellee has appeared throughout the litigation as the customs representative of the actual importer, Transkrit Corporation of New York, which installed and operated such presses here in its business of spot carbonizing paper stock for the printing trades.

The consular invoice stated that the purchase price of each of the machines was 22,000 RM,[1] at which price, plus cost of packing, each unit was entered and appraised. That price included, however, an alleged license fee of 10,000 RM for each machine. That fee was also noted on the consular invoice and paid by the importer, which appealed for reappraisement.

[1] Reichmarks.

It is admitted by the parties that the machines were properly dutiable on the basis of cost of production under section 402 (f) of the Tariff Act of 1930.[2] The question is whether the license fee, as held by the trial judge and the judges of the appellate division on appellee's appeal for reappraisement, was no part of the statutory cost of production.

No evidence was adduced below by the Government. The record discloses, however, that the machines produced a high quality of merchandise and at the time of their exportation were covered by letters patent granted by the United States and owned by the foreign vendor of the machines, a Swiss concern of Zurick, known as Transkrit A. G.[3] The sole manufacturer of the machines, until September of 1942, was a German corporation, Maschinen-Fabrik, M. A. N., of Augsburg-Nurnberg, which manufactured the machines upon orders from Transkrit A. G. The latter obtained the four machines by shipment from its German manufacturer for transhipment to the importer, the Transkrit Corporation of New York, which in payment therefor remitted the sum of 88,000 RM direct to the manufacturer in Germany, of which sum the amount of 40,000 RM was transmitted to Transkrit A. G. of Zurick in payment for certain exclusive territorial rights of the importer hereinafter described.

On November 10, 1936, Transkrit A. G., owning the patent rights on the transkrit machine, granted to Sigmund and Richard Neubauer the exclusive territorial rights in the purchase of the machine for the states of New York and Illinois. The grant was made upon the condition that the grantees not only purchase at least one transkrit machine for use in each of those states but also upon the payment of 10,000 RM for each such machine in addition to the regular price thereof. Neubauer brothers transferred their rights under the agreement to Transkrit Corporation, the present importer, which purchased machines under the agreement for each of the states mentioned above, but prior to the importation of the four machines here in issue. The

---

[2] The pertinent items included in sec. 402 (f) for computing the dutiable value of the instant merchandise are—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

[3] A. G., according to the evidence, means a stock corporation, and Transkrit A. G. means Transkrit Corporation.

importer thereby acquired the exclusive rights to purchase and operate the machines in New York and Illinois.

Thereafter and on January 4, 1937, as Judge Cline aptly points out in the opinion of the appellate division, Sigmund and Richard Neubauer entered into a subsequent contract with Transkrit A. G. which stated that, provided they order two new machines, the Neubauer brothers "have acquired the license for the United States of America." This so-called contract and subsequent correspondence also contained definite reference to the incorporation of the previous contract of November 10, 1936, and it is clear that between the two parties there had been no agreement as the extent of the license granted or revised by the second contract. That was the state of affairs when the four machines at bar were imported.

There is substantial evidence in the record to support the action of the court below based on the premise that no such result was achieved by the instrument of January 4, 1937, as to give the Neubauer brothers an exclusive license for the entire United States.

Moreover, by an agreement of record dated December 15, 1948, entered into by the successors of the two original parties in interest, it was provided that upon the purchase of two additional machines, which would make a total of ten, bought from the patentee and imported by the Transkrit Corporation of New York, it would have the exclusive territorial rights of purchase within the United States. Thereafter, the evidence shows, the present importer would be relieved from the payment of the license fee of 10,000 RM on each additional machine installed by the Transkrit Corporation of New York in this country and the purchase price thereof would then be 12,000 RM.

This latter agreement of December 15, 1948, was not directly binding with respect to the four machines previously imported under the agreement of January 4, 1937. However, that agreement gave rise to serious differences between the parties which continued until they were finally resolved by the new agreement. That agreement, therefore, had an indirect bearing on the situation presented by the record.

Counsel for the Government in their brief vigorously assail the concurring findings of fact recorded in identical language by the respective courts below each of which held that the four involved machines were manufactured by the Maschinen-Fabrik Augsburg-Nurnberg A. G. of Augsburg, Germany, the sole manufacturer of such or similar machines, who shipped the machines to the Transkrit Corporation of New York; and that the cost of production for each machine, as that value is defined in section 402 (f) of the Tariff Act of 1930, was 12,000 RM, plus the cost of packing, as entered.

The import of appellant's argument is that since Transkrit A. G. of Switzerland owned the exclusive patent rights controlling the

manufacture and use of the machines, the finding of fact which led to the court's erroneous determination of value was the fundamental finding that the Maschinen-Fabrik Corporation, and not the Swiss corporation, Transkrit A. G., was the manufacturer of the merchandise at bar. Appellant in effect seeks to have that finding of fact reviewed and reversed so that this court may conclude the 10,000 RM per machine paid by the Transkrit Corporation of New York for territorial license rights in the United States is to be included in the statutory cost of production.

The difficulty with the Government's position is that on an appeal to this court from a review of reappraisement by the United States Customs Court, the judgment of that court will not be disturbed here if there is any substantial evidence in the record to support the findings of fact upon which the judgment is based. *United States* v. *International Forwarding Co.*, 13 Ct. Cust. Appls. 579, T. D. 41436.

We conclude that there is substantial evidence of record to establish that the machines in issue were manufactured by the German corporation hereinbefore described and that the cost of production of each involved machine was 12,000 RM and that the license fee in issue was paid in consideration of the exclusive right to purchase the involved machines for export to the United States. Hence the license fee is not an element which may be properly added in computing the dutiable value of the merchandise on the basis of cost of production. *United States* v. *F. B. Vandergrift Co., et al.*, 26 C. C. P. A. (Customs) 360, C. A. D. 42; *United States* v. *Alfred Dunhill of London, Inc.*, 32 C. C. P. A. (Customs) 187, C. A. D. 305.

For the reasons stated, the judgment of the appellate division of the United States Customs Court is *affirmed*.